ROGER EUGENE PARKER, APPELLEE, V. BEVERLY MAXINE PARKER, NOW KNOWN AS BEVERLY MAXINE WASHINGTON, APPELLANT, AND LISA PARKER, INTERVENOR-APPELLEE.

681 N.W.2d 735

Filed June 25, 2004.   No. S-02-739.

David L. Herzog, of Herzog & Herzog, P.C., for appellant.

Frank X. Haverkamp, of Penke & Haverkamp, for appellee Lisa Parker.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

In February 1977, Roger Eugene Parker and Beverly Maxine Parker, now known as Beverly Maxine Washington, were divorced. Pursuant to the divorce decree, Roger was ordered to pay $100 a month in child support. After 3 years, Roger stopped making child support payments to Beverly. In October 1977, Roger married Lisa Parker. In 1985, Roger and Lisa were divorced. In 1992, despite their divorce, Roger cosigned a loan with Lisa in order to enable her to build a house. Both Roger and Lisa appear on the warranty deed for the property as joint tenants. On January 28, 2000, Beverly filed a motion for judgment on unpaid child support and accrued interest against Roger. On February 2, per Lisa's request, Roger conveyed his interest in their jointly owned property to Lisa by quitclaim

deed. On February 7, Beverly filed the instant action seeking to set aside this conveyance as a fraudulent transfer designed to impair her interests as a creditor of Roger. The main question on appeal is whether Roger's conveyance to Lisa was a fraudulent transfer that should be set aside.

### FACTUAL AND PROCEDURAL BACKGROUND

Prior to 1977, Roger and Beverly were married. The parties lived in Minnesota, and their marriage produced three children. Roger and Beverly were divorced in Minnesota on February 3, 1977. Pursuant to the divorce decree, Roger was ordered to pay $100 a month in child support. On September 16, in an effort to enforce his visitation rights, Roger filed a petition for registration of a foreign judgment in the district court for Douglas County, Nebraska.

On October 8, 1977, Roger married Lisa. On February 20, 1980, Roger and Lisa's sole child was born. On September 30, 1985, Roger and Lisa were divorced in Minnesota. Neither child support nor alimony was awarded in the divorce decree. Despite their divorce, both Roger and Lisa believed that it was important to raise their child in a two-parent household. Therefore, they agreed to continue to live together until their child reached adulthood. Although they lived in the same house in their roles as father and mother, Roger and Lisa did not live as husband and wife. For example, they stayed in separate bedrooms, maintained separate bank accounts, and filed separate income tax returns.

In 1992, Lisa decided to build a house. Lisa applied for a loan to cover its costs, but was told by a mortgage broker that her income was too low to qualify for the loan. Lisa turned to Roger for help, and although he had not been involved in the decision to build the home, Roger agreed to cosign the loan. Thereafter, the loan was approved, Lisa made the downpayment, and Roger and Lisa closed on the property on June 8, 1992.

Both Roger's and Lisa's names appear on the warranty deed for the property as joint tenants with rights of survivorship. In addition, the warranty deed, deed of trust, and disclosure statement all refer to Roger and Lisa as husband and wife. Roger and Lisa, however, contend that throughout the process of purchasing the property, they never claimed to be married, and that no one

inquired about their marital status. Moreover, both Roger and Lisa testified that after they moved into their new home, their separate living arrangements continued.

Although Roger had cosigned the loan and the parties took title jointly, both Roger and Lisa considered the property to be Lisa's personal possession. To this end, Lisa made all of the mortgage payments and paid for needed repairs, improvements, and furnishings. Roger did, however, pay for utilities and do some household chores, including yardwork.

On October 16, 1999, Roger and Lisa's child moved out. Approximately 2 weeks later, per the parties' alleged agreement, Roger also moved out of the home.

On January 28, 2000, Beverly filed a motion for judgment on unpaid child support and accrued interest against Roger. At the time of her motion, Beverly estimated that Roger owed $15,700 in child support and an additional $22,240 in accrued interest. Shortly thereafter, Lisa asked Roger to sign a quit-claim deed to the property. At the time she made this request, Lisa was aware that Beverly was attempting to collect child support from Roger; however, Lisa testified that she did not know Beverly was seeking payment from the equity in the property. In any event, Roger agreed to Lisa's request, and on February 2, 2000, Roger signed a quitclaim deed granting his interest in the property to Lisa. Roger testified he did so because he believed that he had no interest in the property and he wanted to make sure it stayed with its rightful owner. Roger testified that he was not paid anything when he signed the quit-claim deed.

On February 7, 2000, Beverly filed a motion seeking to vacate and set aside the conveyance from Roger to Lisa. Essentially, Beverly alleged that the conveyance was an act to defraud her, a creditor of Roger, in violation of the Uniform Fraudulent Transfer Act (UFTA), Neb. Rev. Stat. § 36-701 et seq. (Reissue 1998). Fearing the impairment of her property, Lisa filed a motion to intervene on February 11. Lisa also requested that the child support lien that was attached to her property be released. On February 17, Lisa's motion to intervene was granted; however, the court did not rule on Lisa's request to have the child support lien on her property released.

On March 2, 2000, Beverly's motion for judgment on unpaid child support and accrued interest was granted, and a judgment was entered against Roger in the amount of $27,420.99. Thereafter, additional hearings were held in regard to Beverly's motion to vacate and set aside the quitclaim deed.

On June 7, 2000, the district court entered an order overruling Beverly's motion to set aside the conveyance. Essentially, the court concluded that there was not clear and convincing evidence that the execution of the quitclaim deed was fraudulent within the meaning of the UFTA. In addition, the court determined that Roger's interest in the property was mere legal title and that a judgment lien does not attach to mere legal title where the equitable and beneficial interests lie elsewhere. Therefore, because it found all the equitable and beneficial interests in the property were with Lisa, the court concluded that Beverly did not establish that the quitclaim deed should be set aside simply because Roger and Lisa purchased the property as joint tenants and a number of the loan documents listed them as husband and wife. Finally, the court determined that even if Roger's interest in the property was more than mere legal title, no lien against him existed at the time he executed the quitclaim deed to Lisa because he had yet to be served with the summons of the action seeking unpaid child support.

On June 9, 2000, Beverly filed a motion for new trial, alleging that the court committed 25 errors of fact and law. On June 16, the court overruled Beverly's motion, and on June 26, Beverly filed her notice of appeal. On appeal, the Court of Appeals determined that no final order had been entered because the district court's order failed to grant or deny the relief Lisa requested in her petition to intervene, i.e., to release the child support lien on her property. Accordingly, the Court of Appeals dismissed the appeal for lack of jurisdiction. *Parker v. Parker*, 10 Neb. App. 658, 636 N.W.2d 385 (2001).

On remand, Beverly filed a motion requesting leave to amend her motion to vacate and set aside the conveyance. Beverly sought to allege that Roger and Lisa formed an association for the purpose of holding the property and took certain fraudulent actions to defeat Beverly's claim. After the court granted Beverly's motion to amend, Lisa filed an answer denying the

new allegations. Thereafter, a limited amount of additional evidence was adduced.

On May 6, 2002, the district court entered an order overruling Beverly's motion to set aside the conveyance. In its order, the court repeated its findings from the June 9, 2000, order. In addition, the court determined that because Beverly failed to establish fraud, her new association-based claim, which was premised on the allegedly fraudulent transfer, must fail. The court also stated its belief that the equities in the case simply did not support the relief Beverly was requesting because she had recently obtained a judgment against Roger for $27,420.99 and Roger's wages were being garnished in connection with that decision. Last, the court ordered that the child support lien on Lisa's property be released.

Thereafter, Beverly filed a motion for new trial, alleging that the court committed 28 errors of law and fact. Beverly's motion for new trial was overruled, and Beverly filed a timely notice of appeal.

## ASSIGNMENTS OF ERROR

On appeal, Beverly assigns, restated, that the district court erred in (1) failing to find that Roger fraudulently transferred his interest in the property to Lisa, (2) failing to set aside Roger's transfer of his interest in the property to Lisa, (3) failing to find that a lien existed on the property prior to the execution of the quitclaim deed, (4) failing to grant her motion for a new trial, (5) sustaining objections to evidence that she presented, (6) failing to find that Roger and Lisa engaged in an association with which Roger had a legal and equitable interest in the property, and (7) allowing Roger and Lisa to testify as to their agreement concerning the ownership and rights in the property.

## STANDARD OF REVIEW

An appeal of a district court's determination that a transfer of an asset was not in violation of the UFTA is equitable in nature. *Eli's, Inc. v. Lemen*, 256 Neb. 515, 591 N.W.2d 543 (1999). In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court. Where credible evidence is in conflict on a material issue of fact, the appellate court

will consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Id.; Dillon Tire, Inc. v. Fifer*, 256 Neb. 147, 589 N.W.2d 137 (1999).

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Gangwish v. Gangwish*, 267 Neb. 901, 678 N.W.2d 503 (2004).

## ANALYSIS
### UFTA

On appeal, Beverly contends that the district court erred in determining that Roger's conveyance to Lisa was not fraudulent under § 36-705, which provides, in relevant part:

(a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor[.]

Under the UFTA, "transfer" means "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." § 36-702(12). A "creditor" is "a person who has a claim," and a "debtor" is "a person who is liable on a claim." § 36-702(4) and (6). A "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 36-702(3).

Pursuant to these definitions, it is obvious that Roger "transferred" property to Lisa when he signed the quitclaim deed. Likewise, it is clear that at the time of the transfer, Beverly had a "claim" against Roger for unpaid child support, and that therefore, Beverly was a "creditor" of Roger and, conversely, Roger was a "debtor" of Beverly. Neither party disputes these conclusions. Instead, the focus of this dispute is on Roger's intent at the

time of the conveyance, and the dispositive issue is whether Roger intended to defraud Beverly when he signed the quitclaim deed to Lisa.

In determining actual intent under the UFTA, § 36-705(b) instructs courts to consider whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was disclosed or concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and

(11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Although long, the aforementioned list of factors is not exclusive; § 36-705(b) states that when determining actual intent, consideration may be given to additional factors. Noting this, we have remained mindful of those factors the common law considers to be indicia of fraud.

"' "The generally recognized badges of fraud are the lack of consideration for the conveyance, the transfer of the debtor's entire estate, relationship between transferor and the transferee, the pendency or threat of litigation, secrecy or hurried transaction, insolvency or indebtedness of the transferor, departure from the usual method of business, the retention by the debtor of possession of the property, and the reservation of benefit to the transferor. . . ." ' "

*Eli's, Inc. v. Lemen*, 256 Neb. 515, 533, 591 N.W.2d 543, 555 (1999), quoting *Schall v. Anderson's Implement*, 240 Neb. 658,

484 N.W.2d 86 (1992). See, also, *Brown v. Borland*, 230 Neb. 391, 432 N.W.2d 13 (1988).

In an action seeking to set aside a fraudulent transfer, the burden of proof is on a creditor to prove, by clear and convincing evidence, that fraud existed in a questioned transaction. *Eli's, Inc., supra*; *Dillon Tire, Inc. v. Fifer*, 256 Neb. 147, 589 N.W.2d 137 (1999). Clear and convincing evidence is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *Fales v. Norine*, 263 Neb. 932, 644 N.W.2d 513 (2002).

Here, Beverly contends that she presented clear and convincing evidence that Roger's conveyance to Lisa was fraudulent. Specifically, Beverly argues that Roger's intent to defraud her was demonstrated by the following facts: (1) Before the transfer was made, Roger had been sued to collect unpaid child support; (2) Roger received nothing of value for the transfer; (3) outside of Roger's interest in the house, there were very limited assets from which Beverly could seek to enforce the judgment; and (4) the transfer was to an insider, Lisa.

As an initial matter, we agree that the evidence establishes that Roger was sued prior to signing the quitclaim deed. Likewise, it is clear that Roger received nothing of value in exchange for signing the quitclaim deed. We conclude that this fact, however, is of limited importance because both Roger and Lisa testified that Roger never made any financial contributions toward the property and did not believe he owned the property. Therefore, it would have been odd for Roger to have received more than a nominal payment for relinquishing his interest in property that he never contributed any assets toward and did not believe he owned.

Next, to some extent, we agree that the record establishes Roger was without other property from which Beverly could seek to enforce the judgment. For example, Roger testified that in addition to owning no other real property, he had not invested in stocks, bonds, or broker accounts. This badge of fraud is mitigated, however, by the fact that Roger was employed and, therefore, his wages could easily be garnished to satisfy the judgment.

Furthermore, we do not agree that Roger transferred his property to an "insider." Under the UFTA, an "insider" is "a relative of the debtor." § 36-702(7)(i)(A). Therefore, in order for Lisa to

be considered an insider, she must have been Roger's relative at the time of the transfer. Although the UFTA does not state who qualifies as a "relative," it is commonly understood that a relative is a person connected with another by blood or affinity. See, e.g., Black's Law Dictionary 1291 (7th ed. 1999) (relative is "[a] person connected with another by blood or affinity; a kinsman"); Webster's Third New International Dictionary, Unabridged 1916 (3d ed. 1993) (relative is "a person connected with another by blood or affinity").

Consequently, because Roger and Lisa are not connected by blood and were not married at the time Roger signed the quitclaim deed, Lisa was not Roger's relative at the time of the transfer. *Cf., Ex Parte Wactor v. Wactor*, 245 Miss. 132, 146 So. 2d 540 (1962); *Robertson v. Aetna Cas. & Sur. Ins. Co.*, 629 So. 2d 445 (La. App. 1993) (ex-wife is not her ex-husband's relative under homeowner's insurance policy because she is not related by blood or marriage). Therefore, Roger did not transfer property to an insider, and this badge of fraud does not exist.

Moreover, as the district court found, a number of additional badges of fraud are noticeably absent from this case. For example, there was no evidence that (1) Roger was insolvent, (2) Roger transferred substantially all of his assets, or (3) Roger retained possession or control of the property after the transfer. Simply put, the evidence adduced at trial did not establish many of the statutory and common-law badges of fraud. Instead, the evidence indicates that Beverly's suit merely provided the impetus for Roger and Lisa to formalize their prior understanding concerning the true ownership of the property.

In sum, based on our de novo review of the record, we conclude that Beverly did not establish by clear and convincing evidence that Roger's conveyance to Lisa was fraudulent.

## PAROL EVIDENCE

On appeal, Beverly contends that any testimony by Roger or Lisa concerning their contention that Roger neither had, nor was intended to have, an actual ownership interest in the property should have been barred by the parol evidence rule. The parol evidence rule renders ineffective proof of a prior or contemporaneous oral agreement which alters, varies, or contradicts

the terms of a written agreement. *In re Trust Created by Cease*, 267 Neb. 753, 677 N.W.2d 495 (2004).

As an initial matter, we note that Beverly did not make a single parol evidence objection during Roger's testimony. Therefore, with regard to Roger's testimony, Beverly waived her right to assert prejudicial error on appeal. See *Hass v. Neth*, 265 Neb. 321, 657 N.W.2d 11 (2003). Additionally, during Lisa's testimony, Beverly made only two parol evidence objections. Therefore, Beverly waived her right to contest the overwhelming majority of Lisa's testimony, including numerous statements concerning her contention that Roger did not, nor was he intended to, have an actual interest in the property. See *id.*

As to the objections Beverly did make, we conclude that the district court did not err in overruling them. Beverly first objected when Lisa's attorney asked Lisa if she signed the loan documents as an individual. The district court sustained Beverly's objection. The court did allow, however, limited inquiry concerning whether the loan documents contained certain notations that indicated that Roger and Lisa were signing the documents as husband and wife. It was in this regard that Beverly made a continuing parol evidence objection to Lisa's subsequent testimony that the signature lines in a number of the loan documents were not near notations that signified that Roger and Lisa were signing the documents as husband and wife. Beverly's other parol evidence objection was in regard to Lisa's testimony that her tax returns showed that she was the head of her household.

We note that in both instances, Lisa testified only to what the documents actually said. Consequently, Lisa's testimony did not alter, vary, or contradict the terms of the loan documents. Therefore, Lisa's testimony did not violate the parol evidence rule, and the district court did not err in overruling Beverly's objections on that basis.

## MERE LEGAL TITLE

Next, Beverly argues that the district court erred in failing to find that a lien on the property existed prior to the time the quitclaim deed was executed. According to Beverly, under Neb. Rev. Stat. § 25-1504 (Reissue 1995), a judgment lien attaches to the land of a debtor the day the judgment is rendered. Therefore,

because Roger was in arrears on his child support obligation, Beverly contends that a judgment lien attached to Roger's interest in the property on June 12, 1992, the date the deed of trust was recorded in Douglas County.

As the district court noted, however, a lien of judgment does not attach to the mere legal title where the equitable and beneficial interest is in another. *Action Realty Co., Inc. v. Miller*, 191 Neb. 381, 215 N.W.2d 629 (1974); *Knaak v. Brown*, 115 Neb. 260, 212 N.W. 431 (1927). In such a situation, equity allows a court to break free from the normal chains of legal title and disregard a lienholder's claim to the interest of a debtor who holds mere legal title.

In the instant case, based on our de novo review, we conclude that the record is replete with evidence which establishes that Roger's interest in the property was that of mere legal title and that all the equitable and beneficial interests in the property resided with Lisa. For example, both Roger and Lisa testified that it was Lisa who wished to construct the house and that it was only after Lisa was refused financing that she turned to Roger. Although Roger cosigned the loan, both parties agreed that Lisa made the downpayment for the property, as well as all of the subsequent mortgage payments. Lisa also paid for the needed repairs and improvements to the home, in addition to paying for the furnishings for the home. Furthermore, Lisa testified that she was the sole decisionmaker when it came to the property and believed she could have sold it without Roger's approval. Likewise, Roger testified that he did not believe that he owned the property.

Although Beverly makes much of the fact that the warranty deed and a few of the loan documents contain references to Roger and Lisa as husband and wife, both Roger and Lisa testified that (1) they never conveyed this information to their financing agent, (2) their financing agent never asked about their marital status, and (3) they signed the documents in a hurried manner without closely reading them. Furthermore, both Roger and Lisa testified that after their divorce, they continued to live together only because they believed it was in their child's best interests. By leaving Lisa's home shortly after his child's departure (and before the initiation of Beverly's suit), Roger demonstrated that he did not consider the property to be his own.

In sum, the evidence revealed that Roger's interest in the property was that of mere legal title and that all the equitable and beneficial interests in the property resided with Lisa. Therefore, the district court correctly concluded that Beverly's judgment lien did not attach to Roger's limited interest in the property.

## ROGER AND LISA AS ASSOCIATION

Beverly also contends that the district court erred in failing to determine that Roger and Lisa formed an association for the purpose of holding property under Neb. Rev. Stat. § 25-313 (Reissue 1995) and then used that association to perpetrate a fraud upon her. The district court determined that because Beverly failed to establish that Roger's conveyance to Lisa was fraudulent under the UFTA, her association claim was without merit. We agree. As noted above, based on our de novo review of the record, Beverly failed to establish that Roger's conveyance to Lisa was fraudulent. Consequently, her association-based theory of recovery, which is premised on the allegedly fraudulent conveyance, must also fail.

## TESTIMONY OF LAWYER

On remand from the Court of Appeals, Beverly called a local lawyer to testify about the significance that the police would attach to Roger and Lisa's living situation. Lisa objected on the ground that the police, and not a lawyer, should be called to testify as to what the police will do in a given situation. The objection was sustained, and Beverly made an offer of proof.

Essentially, the lawyer would have testified that when seeking to obtain a search warrant, the police will often submit utility and land title records to the judicial officer as evidence that the person has a legal interest in the property discussed in the records. Therefore, according to the lawyer, because Roger's name was on the warranty deed and Roger paid utilities for the home, the police would have concluded that Roger had a legal interest in the property.

On appeal, Beverly contends that the district court erred in sustaining Lisa's objection to the lawyer's testimony. Without passing on the correctness of the district court's ruling, we conclude that Beverly was not prejudiced by the exclusion of this evidence because substantially similar evidence was admitted

without objection. See *Crete Ed. Assn. v. Saline Cty. Sch. Dist. No. 76-0002,* 265 Neb. 8, 654 N.W.2d 166 (2002) (improper exclusion of evidence is ordinarily not prejudicial where substantially similar evidence is admitted without objection).

The record illustrates that prior to Lisa's objection and Beverly's offer of proof, the lawyer was allowed to testify, without objection, that (1) in anticipation of getting a search warrant to search a home, the police look to see who has a legal interest in the property; (2) the police examine land records and utility records to determine who has a legal interest in the property; and (3) land records and utility records are often included in the affidavit upon which the application for a search warrant is based. In addition, evidence had already been presented that (1) Roger's name was on the warranty deed to the property and (2) Roger paid the utilities for the home in which he and Lisa lived.

Therefore, prior to Lisa's objection, the court had already been presented with evidence from which it could determine that if the police sought to search the house where Roger lived, they would conclude, based on title and utility records, that Roger had a legal interest in the home. Consequently, no prejudice has befallen Beverly because the lawyer, if he had been allowed to testify further, would have simply emphasized and restated what was already before the court.

### CONCLUSION

For each of the foregoing reasons, Beverly's assignments of error are without merit. The judgment of the district court is affirmed.

AFFIRMED.