275 Neb. 418
JEFFREY JAY REED, APPELLEE,
v.
CHRISTINE JENNIFER REED, APPELLANT.
No. S-06-757.
Supreme Court of Nebraska.
Filed April 11, 2008.
John W. Ballew, Jr., and Karisa D. Johnson, of Ballew, Schneider, Covalt, Gaines & Engdahl, P.C., L.L.O., for appellant.
Mark Porto and John A. Wolf, of Shamberg, Wolf, McDermott & Depue, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
HEAVICAN, C.J.

INTRODUCTION
Jeffrey Jay Reed petitioned for divorce from Christine Jennifer Reed. Shortly before filing for divorce, Jeffrey's interests in two business venturesC.J. Reed Enterprises, Inc., and R.S. Wheel, L.L.C.were transferred to third parties. At trial, the district court for Hall County was asked to determine whether those transfers violated Nebraska's Uniform Fraudulent Transfer Act (UFTA).[1] The district court concluded that the transfers were not fraudulent and then dissolved the parties' remaining assets. Christine now appeals, challenging the district court's conclusion that the predivorce transfers of Jeffrey's business interests did not violate the UFTA. We affirm the district court's judgment for the reasons set forth below.

BACKGROUND
The only issues on appeal concern Jeffrey's interests in two businessesC.J. Reed Enterprises and R.S. Wheel. Accordingly, we include in our background discussion only the underlying facts that directly relate to those two business interests.

C.J. REED ENTERPRISES
In 1997, approximately 1 year after they were married, Christine and Jeffrey formed C.J. Reed Enterprises. They formed the business to purchase and operate a jewelry store. Christine and Jeffrey obtained financing for the store from Norwest Bank. Jeffrey's parents, James and Precious Reed, agreed to act as sureties on the loan from Norwest Bank. On July 11, 1997, Christine, Jeffrey, James, and Precious executed an agreement setting forth each party's rights and obligations stemming from James and Precious' roles as sureties. At the time, Christine and Jeffrey each owned half of the 10,000 total shares of C.J. Reed Enterprises stock. The agreement specified that James and Precious could take title to all of the corporation's stock if Christine or Jeffrey ever failed to discharge her or his obligations as owners of C.J. Reed Enterprises to the satisfaction of James and Precious. Among other things, the agreement required Christine and Jeffrey to avoid "default" in making "payment to trade creditors or any other creditors."
In 2000, James and Precious paid Christine and Jeffrey's debt to Norwest Bank and thereby became the sole financiers of Christine and Jeffrey's business. The total principal on Christine and Jeffrey's loan was $576,595.92, and interest was calculated at $188,163, assuming the loan was paid within 10 years. It is not clear how much Christine and Jeffrey paid toward the loan before May 2001. However, between May 2001 and the time of the divorce proceeding, they paid a mere $3,000 toward the principal and $40,000 toward the interest. Christine and Jeffrey both concede that this constituted a "default" within the meaning of their July 1997 agreement with James and Precious.
Nevertheless, James and Precious did not execute their right to take title of C.J. Reed Enterprises stock until Jeffrey advised James in early June 2004 of his intent to divorce Christine. On June 11, 2004, approximately 2 weeks before Jeffrey filed for divorce, James and Precious notified their attorney that they wanted to exercise their option to take title of C.J. Reed Enterprises. On June 15, James and Precious sent Christine and Jeffrey separate letters informing them that James and Precious were transferring all 10,000 shares of C.J. Reed Enterprises stock into their names. Jeffrey filed for divorce on June 24.

R. S. WHEEL
In January 2004, Jeffrey formed R.S. Wheel with Dr. Steven Schneider in order to purchase two parcels of land on South Locust Street in Grand Island, Nebraska. At the time of purchase, the land was situated across the street from a plot where Wal-Mart was planning to open a store. R.S. Wheel purchased this land for $380,000. The hope was that the land could be resold for much more due to its proximity to emerging local businesses. R.S. Wheel received financing from Home Federal Savings and Loan, and as of January 12, 2006, R.S. Wheel owed $383,842.70 on the loan and interest.
On June 18, 2004, 6 days before he filed for divorce, Jeffrey transferred his interest in R.S. Wheel to Schneider. In return, on June 21, Jeffrey received a check for $15,000. Schneider testified that prior to this transfer, he and Jeffrey discussed Jeffrey's plans to divorce Christine. On June 22, Jeffrey deposited the check in an account held in his name only. Some of the funds were spent on various debts.
In reviewing these facts, the district court specifically found that the transfers were for legitimate reasons and not fraudulent conveyances under the UFTA. Accordingly, the district court did not consider either business interest when it made an equitable distribution of the marital estate between Christine and Jeffrey. Christine now challenges that determination on appeal.

ASSIGNMENTS OF ERROR
Christine assigns, restated, consolidated, and renumbered, that the district court erred by failing to find that the transfers of Jeffrey's interests in (1) C.J. Reed Enterprises and (2) R.S. Wheel were fraudulent transfers in violation of the UFTA and therefore subject to an equitable division among the parties as property within the marital estate.

STANDARD OF REVIEW
[1-3] An appeal of a district court's determination that a transfer of an asset was not in violation of the UFTA is equitable in nature.[2] In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court.[3] Where credible evidence is in conflict on a material issue of fact, the appellate court will consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.[4]

ANALYSIS
As the Nebraska Court of Appeals aptly summarized, the UFTA allows a creditor to reach an asset that a debtor has transferred if the transfer bears certain indicia of fraud.[5] In other words, under the UFTA, "`transfers of property designed to place a debtor's assets beyond the reach of the debtor's creditors are void as to the creditors.'"[6]
[4] It is elementary, therefore, that a person seeking to set aside a transfer under the UFTA must first prove that he or she is a "creditor" under the UFTA and that the party against whom relief is sought is a "debtor." The UFTA defines a "creditor" as "a person who has a claim"[7] and a "debtor" as "a person who is liable on a claim."[8] A "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."[9]
Christine believes she is a creditor of Jeffrey because he owes her payments for child and spousal support. Those support obligations vest Christine with a right to payments for which Jeffrey is liable. It appears, therefore, that Jeffrey is a debtor of Christine under the UFTA with respect to his support obligations.[10] Jeffrey concedes as much, but questions whether that permits Christine to invoke the UFTA in this case.
As Jeffrey points out, Christine is not asking that predivorce transfers of Jeffrey's business interests be set aside in order to satisfy Jeffrey's support obligations. Rather, Christine uses her status as a "creditor" for support purposes as the basis for her request that the transferred assets be put back into the marital estate. The question, then, is whether the UFTA permits Christine to use her status as a creditor for one particular claim to seek relief for an unrelated purpose.
[5] As set forth in the UFTA, "[i]n an action for relief against a transfer . . . under the [UFTA], a creditor . . . may obtain . . . avoidance of the transfer" only "to the extent necessary to satisfy the creditor's claim."[11] We read this language as requiring some nexus between the claim upon which an individual's creditor status depends and the purpose for which that individual seeks to set aside a fraudulent transfer. In other words, Christine's status as a creditor for purposes of child and spousal support might entitle her to set aside a fraudulent transfer by Jeffrey if necessary to secure her rights to those support payments. (Of course, Christine does claim that the allegedly fraudulent transfers would interfere with Jeffrey's ability to meet his child or spousal support obligations.) But under § 36-708(a)(1), Christine's right to support payments does not automatically render her a creditor for purposes of the interest she is asserting in this casethe right to an equitable share of the marital estate. Christine's ability to qualify as a creditor for that purpose must therefore arise independently.
For Christine to qualify as a creditor for purposes of the equitable division of the marital estate, her right to an equitable division must be a "claim" within the meaning of the UFTA. Again, the UFTA defines a "claim" as a "right to payment."[12] Therefore, properly framed, the question is whether a spouse's right to an equitable division of the marital estate qualifies as a "right to payment" for which the other spouse is liable.
We have not addressed that question before, and as far as we can see, neither have appellate courts in any other jurisdiction. In Caldwell v. Caldwell,[13] the Wisconsin Supreme Court concludedwithout elaborating on its rationalethat a wife qualified as a "creditor" in light of her right to an equitable division of the marital estate. Although Caldwell was not decided under the UFTA, the Wisconsin act at issue was very similar to modern versions of the UFTA.
There is, however, considerable force to the other side of the argument. As a general matter, "payment" is defined as the [p]erformance of an obligation by the delivery of money or some other valuable thing accepted in partial or full discharge of the obligation."[14] But it would be quite a stretch to say, for example, that a husband performs an obligation to his wife during the divorce court's equitable division of the marital estate. In making this argument in his brief, Jeffrey points out that, [a]s opposed to traditional `payment' obligations, neither spouse `owes' the other spouse anything in a property division. Rather, the court determines how to divide the property which already belongs to them."[15]
[6] We agree and hold that a spouse's right to an equitable distribution of the marital estate is not a "right to payment" under the UFTA. Accordingly, the UFTA does not apply in cases where, as here, an individual believes that his or her former spouse fraudulently transferred assets before the divorce to prevent those assets from being equitably distributed as part of the marital estate. Instead, such a claim is perhaps more properly litigated as a claim for dissipation of marital assets.[16] Obviously, this conclusion renders it unnecessary for us to determine whether the predivorce transfers of Jeffrey's business interests were fraudulent in violation of the UFTA. And because Christine did not assign errors or present arguments related to any other theories of recovery, we affirm the district court's judgment.

CONCLUSION
Christine argues that the predivorce transfers of Jeffrey's business interests should be set aside as fraudulent transfers under the UFTA and thereby equitably distributed as part of the marital estate. Christine's argument is based on the belief that she is a creditor of Jeffrey for child and spousal support purposes. We hold, however, that the UFTA requires some nexus between the claim for which a party is asserting creditor status and the type of relief sought. We also hold that a former spouse's right to an equitable division of the marital estate is not a "right to payment" under the UFTA, and thus a former spouse does not qualify as a "creditor" under the UFTA by virtue of his or her right to an equitable share of the marital estate.
As a result, the UFTA does not apply to Christine's claims that the predivorce transfers of Jeffrey's business interests should be set aside as fraudulent. We therefore affirm the district court's refusal to include Jeffrey's interests in C.J. Reed Enterprises and R.S. Wheel in the marital estate.
AFFIRMED.
NOTES
[1] Neb. Rev. Stat. §§ 36-701 to 36-712 (Reissue 2004).
[2] Parker v. Parker, 268 Neb. 187, 681 N.W.2d 735 (2004) (citing Eli's, Inc. v. Letnen, 256 Neb. 515, 591 N.W.2d 543 (1999)).
[3] Strunk v. Chrotny-Strunk, 270 Neb. 917, 708 N.W.2d 821 (2006); Parker, supra note 2.
[4] Strunk, supra note 3; Parker, supra note 2.
[5] Trew v. Trew, 5 Neb. App. 255, 558 N.W.2d 314 (1996), reversed on other grounds 252 Neb. 555, 567 N.W.2d 284 (1997).
[6] National Loan Investors, L.P. v. Givens, 952 P.2d 1067, 1069 (Utah 1998).
[7] § 36-702(4).
[8] § 36-702(6).
[9] § 36-702(3) (emphasis supplied).
[10] See Parker, supra note 2.
[11] § 36-708(a)(1).
[12] § 36-702(3).
[13] Caldwell v. Caldwell, 5 Wis. 2d 146, 92 N.W.2d 356 (1958).
[14] Black's Law Dictionary 1165 (8th ed. 2004).
[15] Brief for appellee at 8 (emphasis supplied).
[16] See, e.g., Harris v. Harris, 261 Neb. 75, 621 N.W.2d 491 (2001); Herron v. Johnson, 714 A.2d 783 (D.C. 1998); Jeffcoat v. Jeffcoat, 102 Md. App. 301, 649 A.2d 1137 (1994).