STEVEN L. HUSEN, APPELLEE, V. NANCY K. HUSEN, APPELLANT.
487 N.W.2d 269

Filed July 10, 1992.    No. S-89-1429.

John A. Wolf, of Shamberg & Wolf, for appellant.

John B. McDermott, of McDermott, Depue & Zitterkopf, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

This is an appeal by the respondent, Nancy K. Husen, from an order dismissing her application to hold her former husband, the petitioner, Steven L. Husen, in contempt of court because of his failure to make certain alimony payments. The court determined that the remarriage of the respondent caused a termination of the alimony payments which respondent was seeking to collect under the decree of dissolution. The respondent assigns as error generally that the court incorrectly determined that the obligation to make alimony payments was terminated. We affirm.

The decree of dissolution was entered by the trial court on June 14, 1983. The decree, which tracked the property settlement agreement of the parties, provided in part as follows:

5. The Petitioner is hereby ordered to pay alimony to the Respondent as follows:

a. The sum of One Thousand Five Hundred and No/100 Dollars ($1,500.00) per month commencing July 1, 1983, for a term of seventy-two (72) consecutive months. These payments shall terminate only upon the death of the Respondent.

b. Commencing July 1, 1989, for a period of seventy-two (72) months consecutively, the sum of One Thousand Five Hundred and No/100 Dollars ($1,500.00) per month. These payments shall terminate upon any of the following occurrences: the remarriage of the Respondent or the death of either the Petitioner or the Respondent.

This award of alimony shall not be modified or revoked by either party but for the reasons set forth herein.

The parties stipulated at trial that the respondent remarried on July 28, 1984, and divorced in March 1986. In addition, the parties stipulated that the petitioner made alimony payments in accordance with the provisions of paragraph 5a set out above, but has not made any payments since July 1, 1989, as originally provided for in paragraph 5b.

In response to the petitioner's failure to provide alimony after July 1, 1989, the respondent filed an affidavit for contempt and a motion and order to show cause which was

disposed of as previously mentioned.

The petitioner testified in court that his understanding of the provision was that he would pay alimony for the first 6 years after the divorce (which he had done) and for an additional period of 6 years if his former wife did not remarry in the interim period. It was his contention that because the alimony provided for in paragraph 5b was to terminate upon the remarriage of the respondent, her remarriage terminated any obligation of his to commence making those payments.

Respondent argues that it was her understanding that the second schedule of alimony payments would stop only if she remarried during that second 6-year period. That is, because she remarried and divorced before the beginning of the second 6-year period, she was eligible to begin receiving those payments until she might remarry during that period.

The attorney who drew the property settlement testified that his interpretation of the agreement was that a remarriage at any time would terminate the second set of alimony payments.

An acquaintance of the respondent testified that less than a year before respondent's remarriage, the respondent told her that she realized that upon her remarriage she would receive alimony only during the first 6-year period.

The foregoing evidence would have been admissible only if the contract was ambiguous. It was received over the respondent's objection. Respondent contended that the contract was not ambiguous. We agree for different reasons.

In *Albee v. Maverick Media, Inc.*, 239 Neb. 60, 71, 474 N.W.2d 238, 245 (1991), this court quoted the following language from *Knox v. Cook*, 233 Neb. 387, 446 N.W.2d 1 (1989), concerning ambiguous documents:

> "Whether a document is ambiguous is a question of law initially determined by a trial court. *Luschen Bldg. Assn. v. Fleming Cos.*, 226 Neb. 840, 415 N.W.2d 453 (1987). 'Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review.' *Huffman v. Huffman*, 232 Neb. 742, 748, 441 N.W.2d 899, 904 (1989). See, also, *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 383 N.W.2d 29 (1986).

"Ambiguity exists in an instrument when a word, phrase, or provision in the instrument has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *In re Estate of Walker*, 224 Neb. 812, 402 N.W.2d 251 (1987). See, also, *National Farmers Union Serv. Corp. v. Edwards*, 220 Neb. 231, 369 N.W.2d 76 (1985) (a document is ambiguous if, after application of the pertinent rules for construction, there is uncertainty concerning which of two or more reasonable meanings represents the intention of the parties). The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous. *Lueder Constr. Co. v. Lincoln Electric Sys.*, 228 Neb. 707, 424 N.W.2d 126 (1988). If the contents of a document are unambiguous, the document is not subject to interpretation and construction, and the intention of the parties to the document must be determined from the contents of the document. *Fisbeck v. Scherbarth, Inc.*, 229 Neb. 453, 428 N.W.2d 141 (1988)."

The meaning of an unambiguous contract presents a question of law. *Spittler v. Nicola*, 239 Neb. 972, 479 N.W.2d 803 (1992).

"A contract must be construed as a whole and, if possible, effect must be given to every part thereof." *Crowley v. McCoy*, 234 Neb. 88, 91, 449 N.W.2d 221, 224 (1989).

"A contract is only ambiguous if, upon considering the contract as a whole, the contract leaves uncertain which of two or more meanings represents the true intentions of the parties." *Nogg Bros. Paper Co. v. Bickels*, 233 Neb. 561, 563-64, 446 N.W.2d 729, 731 (1989).

Read in this manner, the contract provides for two alimony payment periods of 6 years each. The first period ran from July 1, 1983, to July 1, 1989, and was terminable only upon the death of the respondent. The second period of alimony payments was to start on July 1, 1989, and would last until July 1, 1995, unless terminated by the death of either party or the remarriage of the respondent. We do not find support for respondent's argument that "[p]aragraph 5(b) also clearly and

unambiguously states that the terms and conditions of the second schedule would <u>not commence until July 1, 1989</u>." Brief for appellant at 8. We find that the language in paragraph 5b plainly and unambiguously states only that the second period of alimony payments was to start on July 1, 1989, not that the terms and conditions of the second payment schedule would start anew on July 1, 1989, as contended by the respondent.

Respondent's interpretation of the alimony provision would have the absurd result that if the husband had died during the first 6-year period, his estate would still be required to pay alimony during the second 6-year period, because his death did not occur after July 1, 1989. Under the same analysis, the respondent would still be entitled to alimony if she had remained married to her second husband, because the remarriage did not take place after July 1, 1989.

> A court is not free to speculate about terms absent from a written contract; where the parties have clearly expressed an intent to accomplish a particular result, it is not the province of a court to rewrite a contract to reflect the court's view of a fair bargain. *Wurst v. Blue River Bank*, 235 Neb. 197, 454 N.W.2d 665 (1990). More specifically, a court is not free to rewrite a contract so as to provide terms contrary to those which are expressed. See *Kansas-Nebraska Nat. Gas Co. v. Swanson Bros.*, 215 Neb. 398, 338 N.W.2d 774 (1983).

*Kozlik v. Emelco, Inc.*, 240 Neb. 525, 536, 483 N.W.2d 114, 121 (1992). The subject language is a bargained-for contractual provision. Although the respondent may be dissatisfied with the bargain she made, it is not for this court to rewrite the contract she executed. See *Kozlik, supra.*

This case is similar to *Rumbaugh v. Rumbaugh*, 229 Neb. 652, 428 N.W.2d 500 (1988), which also dealt with a property settlement agreement. The parties in *Rumbaugh* disagreed about the following provision which provided for the college education of their child:

> "The respondent further agrees that when said child graduates from high school, he will pay the yearly cost of the college education for said child for a maximum of 4 years beyond high school, said yearly total costs not to

exceed the normal cost then in effect for attendance at the University of Nebraska at Lincoln, or one of the state public schools in Nebraska; that this cost will include, but not be limited to, tuition, mandatory or other special fees, book costs, [sorority costs,] and the like, but will not cover clothing or food costs . . . ."

*Id.* at 652-53, 428 N.W.2d at 501. When the father refused to pay certain education expenses, the mother filed a motion for contempt. The court ordered a consolidated hearing for contempt and modification. During the hearing, the trial court excluded the father's testimony concerning his interpretation of the education expenses provision. This court agreed with the trial court that the provision was unambiguous and that therefore testimony concerning the parties' intentions should be excluded.

Parol evidence should not have been received in this case. However, as a general rule, to constitute reversible error in a civil case the admission or exclusion of evidence must unfairly prejudice a substantial right of a litigant complaining about such evidence admitted or excluded. *Rose v. City of Lincoln*, 234 Neb. 67, 449 N.W.2d 522 (1989). The admission of the evidence did not unfairly prejudice the respondent, since we determine that the property settlement unambiguously provides that a remarriage at any time precludes the second period of alimony payments. In any event, we determine as a matter of law that the only disputed question in this case was a question of law which we decide independently of the decision reached by the trial court and without relying upon any of the erroneously admitted evidence. See, *In re Interest of S.S.L.*, 219 Neb. 911, 367 N.W.2d 710 (1985); *Stecker v. Stecker*, 197 Neb. 164, 247 N.W.2d 622 (1976). The trial court reached the correct conclusion.

Respondent also argues that the trial court erred in applying Neb. Rev. Stat. § 42-365 (Reissue 1988) to the case at hand because the parties had "otherwise agreed," thus making the statute inapplicable. It is true that the trial court's journal entry provided in part, "Where a remarriage is terminated by divorce, a wife is not entitled to reinstatement of a former husband's obligation to support her unless otherwise agreed

upon as provided <u>Neb. Rev. Stat</u>. §42-365." Again, we agree with the respondent's conclusion, but it avails her nothing. We conclude from the property settlement agreement, which is the basis for the decree generally, and without reference to § 42-365, that the petitioner's obligation under paragraph 5b terminated and was never revived following her remarriage.

The judgment of the district court is affirmed.

AFFIRMED.