GRANT J. STRUNK, APPELLEE AND CROSS-APPELLANT, V.
KIM CHROMY-STRUNK, APPELLANT AND CROSS-APPELLEE.
708 N.W.2d 821

Filed January 20, 2006.    No. S-04-879.

918

Richard T. Seckman, of Karel & Seckman, for appellant.

Sally A. Rasmussen, of Knudsen, Berkheimer, Richardson & Endacott, L.L.P., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## I. NATURE OF CASE

Kim Chromy-Strunk, now known as Kim Svatora, and her former husband, Grant J. Strunk, were divorced in 2001. The decree contained a settlement agreement providing Grant with an additional $75,000 judgment if, during Grant's lifetime, Kim voluntarily or involuntarily sold, transferred, gifted, conveyed, or foreclosed upon the marital property granted to her. It is under this provision that Grant sought to determine the $75,000 due and to garnish Kim's checking account, after Kim had "conveyed" the property by issuing a warranty deed to herself and her second husband, Roger A. Svatora, in joint tenancy.

The district court held that the provision was a valid condition precedent in a contract, and not a void conditional judgment, and that the condition had been satisfied by the warranty deed. It therefore overruled Kim's motion to quash the garnishment, determined that $75,000 plus accrued interest from the time of the conveyance was due and owing in full, and directed the garnishee to pay into the court. The primary issue presented in this case is whether the provision is a void conditional judgment, and, if not, whether the condition for the provision was satisfied.

## II. BACKGROUND

Kim and Grant were divorced by the district court on April 18, 2001. Pursuant to the property settlement agreement (the Settlement) attached to the decree, Kim, in addition to a vehicle and other personal property, was awarded all right, title, and

interest in the marital residence subject to any encumbrances on the property, including a mortgage balance of approximately $90,000. Grant, in addition to a vehicle and other personal property, was awarded $50,000 to be paid by Kim on or before April 1, 2004, said sum accruing interest at 6 percent per annum until paid in full. Furthermore, the Settlement provided:

> [I]f at any time said real property is sold, transferred, gifted, conveyed, foreclosed upon, or for any other reason or in any other manner conveyed, whether voluntarily or involuntarily by the Respondent [(Kim)] to any third party, Petitioner [(Grant)] shall receive the additional sum of $75,000 which shall accrue no interest until due. This additional sum of $75,000 shall only be due to the Petitioner by the Respondent if said property is sold or conveyed as described above, during the Petitioner's lifetime. If said real property is sold or transferred as described above, after the Petitioner's death, Petitioner shall not be entitled to the additional sum of $75,000, but the initial sum of $50,000, together with interest, shall be due to the Petitioner or his estate.
>
> Both the $50,000 judgment and the $75,000 judgment shall be liens against said property and shall remain liens against said property until said sums are paid or otherwise extinguished.

The Settlement set forth that Kim and Grant acknowledged that its terms and provisions were "fair, reasonable, equitable and not unconscionable"; that it had been "carefully examined and entered into freely and voluntarily by each of them"; and that they had both received legal advice in connection with the negotiation and execution of the Settlement from attorneys of their choosing. The district court, in the dissolution decree, found the Settlement to be reasonable and equitable and not unconscionable, and ordered compliance therewith.

On February 18, 2004, Kim filed an application for subordination of judgment lien and notice of hearing with the district court. The application described the $50,000 judgment and the $75,000 contingent amount. Kim explained that she desired to pay Grant the $50,000 sum plus interest on or before the April 1, 2004, due date set forth in the Settlement, but that she did not

have sufficient liquid assets to do so. As a result, she was trying to refinance the first lien mortgage on the marital residence in order to procure sufficient funds. However, the finance company refused to loan the required funds unless its loan was in first position ahead of Grant's lien attached to the $75,000 contingent payment. Because Grant had refused Kim's request to voluntarily subordinate his contingent payment lien, Kim asked the district court to order such subordination. Grant objected to the subordination on the grounds that it would effectuate an improper modification of the Settlement, it was requested for the purpose of avoiding payment, and it would unduly reduce the security for his $75,000 lien.

The district court granted the request for subordination of Grant's $75,000 lien and issued a corresponding order requiring Kim to use the proceeds of the refinancing to pay Grant's $50,000 lien. On March 15, 2004, Grant appealed to the Nebraska Court of Appeals. See *Strunk v. Chromy-Strunk*, No. A-04-351, 2004 WL 2216508 (Oct. 5, 2004) (not designated for permanent publication) (*Strunk I*). Relying on *Hall v. Hall*, 176 Neb. 555, 126 N.W.2d 839 (1964), the district court denied Grant's motion for a supersedeas bond, reasoning that the bond was not expressly provided for under Neb. Rev. Stat. § 25-1916 (Cum. Supp. 2002), and was therefore discretionary with the court. The record reflects that no cash in lieu of cost bond or supersedeas bond was filed in *Strunk I*. Because of the disallowance of the supersedeas bond, the district court's order approving subordination of the $75,000 contingent lien remained in full force and effect and was not stayed pending any appeal.

On October 5, 2004, the Court of Appeals released an unpublished opinion reversing the district court's decision granting subordination of the $75,000 lien to the new lien of the refinancing institution. The Court of Appeals reasoned that there were insufficient facts to support Kim's burden of showing that the subordination would not unduly reduce the security for the payment of the lien. Kim did not request further review of that decision.

While *Strunk I* was pending, Kim refinanced the residence, and on April 1, 2004, a joint tenancy warranty deed was filed

wherein the residence was "convey[ed]" to Kim and her second husband, Roger, as follows:

**KIM P. SVATORA, formerly known as KIM P. CHROMY, and ROGER A. SVATORA, Wife and Husband,** Grantor, whether one or more, in consideration of **$1.00 and other valuable consideration,** receipt of which is hereby acknowledged, conveys to **KIM P. SVATORA and ROGER A. SVATORA, Wife and Husband,** Grantees, as joint tenants and not as tenants in common

. . . .

That same date, Kim tendered a check to Grant in the amount of $58,860.27 by depositing it with the clerk of the district court. Grant returned the check to Kim explaining that he could not accept such funds without jeopardizing his appeal.

On May 26, 2004, Grant's attorney filed with the Colfax County District Court an affidavit and praecipe for summons in garnishment. The attorney stated that Grant had recovered a judgment against Kim on April 18, 2001, which judgment became due and payable on April 1, 2004, and that there was due on the judgment the sum of $75,000 plus $614.90 interest as of May 25, and $13.10 costs, for a total of $75,628. Pursuant to the aforementioned "judgment," interrogatories were sent to financial institutions where Kim was thought to hold funds.

Attached to at least one of these interrogatories was a "Request for Hearing" form, which Kim signed and filed with the district court, contesting the propriety of the garnishment. Kim also filed a motion to quash the garnishment and supporting affidavit and praecipe for summons. In her motion to quash, she alleged that the district court lacked jurisdiction, that the pleadings and records of the district court did not reflect a $75,000 judgment in Grant's favor because the conditions or contingencies had not been satisfied, and that the judgment upon which Grant wished to garnish was a void conditional judgment.

Grant responded with a "Motion to Determine Amounts Due and Notice of Hearing," wherein Grant alleged that the condition for his $75,000 lien had been satisfied by way of the April 1, 2004, joint tenancy warranty deed, and asked the court to determine the amounts due to him by virtue of the dissolution

settlement and decree. Grant also filed the garnishee bank's response to the garnishment interrogatories, wherein it admitted being in possession of $4,315.97 in a demand account belonging to Kim. Grant requested that the court order this amount be paid into the court. Kim objected.

A hearing was held on Kim's request for a hearing on the garnishment and motion to quash and on Grant's motion to determine amounts due. During the hearing, Kim asked the court to mark the court file in its entirety and enter it as an exhibit. Grant objected to the court's taking judicial notice of the entire file. After some discussion about whether the file could be judicially noticed and whether it needed to be marked with an exhibit sticker, the court granted Kim's request and entered the file as exhibit 4. That exhibit contains 83 unnumbered pages, some double-sided, and includes the praecipe for bill of exceptions, notice of appeal, and other documents related to *Strunk I* that are found in the transcript for that case.

The district court held that the transfer of Kim's interest in the property to herself and Roger in joint tenancy created in a third party an undivided share of the whole property, thus fulfilling the condition under the Settlement and causing the $75,000 amount to be due and owing. The court rejected Kim's argument that the provision for $75,000 was void because it was a conditional judgment, deciding instead that the provision was a permissible condition precedent in a contract. The court thus overruled Kim's objection to the garnishment and ordered the garnishee to pay the $4,315.97 amount into the court for payment to Grant, the judgment creditor.

Kim filed her appeal from the July 2004 orders, filing a supersedeas bond in the amount of $79,000. We moved the case to our docket pursuant to our statutory authority to regulate the caseloads of the appellate courts of this state. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

### III. ASSIGNMENTS OF ERROR

Kim assigns, restated, that the district court erred in (1) overruling her objections to the garnishment because Grant did not first seek a declaratory judgment interpreting the decree; (2) finding that there was a valid and enforceable condition precedent for

the payment of money contained in the Settlement, rather than finding that approving the $75,000 judgment was a conditional judgment, void as a matter of law; and (3) determining that the transfer of Kim's interest in the real estate to herself and Roger by joint tenancy warranty deed fulfilled the condition for the payment of the judgment.

Grant assigns on cross-appeal that the district court erred in taking judicial notice of the entire court file without specifying which facts or documents it was judicially noticing.

## IV. STANDARD OF REVIEW

In an appeal of an equity action, an appellate court tries factual questions de novo on the record, reaching a conclusion independent of the findings of the trial court. Where credible evidence is in conflict on a material issue of fact, the appellate court will consider and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Parker v. Parker*, 268 Neb. 187, 681 N.W.2d 735 (2004).

On a question of law, an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *Holm v. Holm*, 267 Neb. 867, 678 N.W.2d 499 (2004).

## V. ANALYSIS

### 1. Procedural Infirmity

We first address Kim's argument that the lower court pleadings suffer from procedural infirmities. Specifically, Kim argues that Grant was required to establish satisfaction of the condition to the $75,000 judgment before attempting to execute thereon and that the proper method for doing so was by a separate action for declaratory relief. In arguing that Grant should have first resolved the controversy by bringing a separate action for declaratory relief, Kim relies on the prior statement of this court that "[w]here there is a genuine controversy between the parties as to the meaning of language in a decree of dissolution, and the appeal period has passed, a proper method to resolve the controversy is by a separate action for declaratory relief." See *Buhrmann v. Buhrmann*, 231 Neb. 831, 835, 438 N.W.2d 481,

484 (1989), citing *Neujahr v. Neujahr*, 223 Neb. 722, 393 N.W.2d 47 (1986), and *Black v. Sioux City Foundry Co.*, 224 Neb. 824, 401 N.W.2d 679 (1987).

In *Buhrmann v. Buhrmann, supra*, we concluded that since the issue of the division of certain leasehold improvements was not placed in issue or adjudicated upon in the original dissolution decree, it was a proper subject for determination in the husband's declaratory judgment action. We did not state that such an action was the only acceptable means to obtain such a determination.

In *Neujahr v. Neujahr*, 233 Neb. at 728, 393 N.W.2d at 51, we noted that there are instances when a decree is ambiguous and "parties are left at their peril to know what they are authorized to do." In such situations, "the parties must bring some form of action which raises the issue and thereby requires the court before whom the matter is then pending to resolve the issue as a matter of law in light of the evidence and the meaning of the decree as it appears." *Id.* We did not specify what form of action parties "left at their peril" should bring. Only the dissent, in the course of arguing that the remand unnecessarily occasioned further expenditure of judicial time and energy, stated that where there "appears to be a genuine controversy between the parties as to the meaning of some of the language of the decree," the "better rule is that such a controversy can be resolved by declaratory relief." *Id.* at 729, 393 N.W.2d at 51 (Boslaugh, J., dissenting).

A district court, in the exercise of its broad jurisdiction over marriage dissolutions, retains jurisdiction to enforce all terms of approved property settlement agreements. See *Zetterman v. Zetterman*, 245 Neb. 255, 512 N.W.2d 622 (1994). A court that has jurisdiction to make a decision also has the power to enforce it by making such orders as are necessary to carry its judgment or decree into effect. *Laschanzky v. Laschanzky*, 246 Neb. 705, 523 N.W.2d 29 (1994). Grant's motion to determine amounts due was proper under the circumstances in this case. See *Spencer v. Spencer*, 126 S.W.3d 770 (Mo. App. 2004) (affirming trial court's order sustaining mother's motion to determine amounts due and owing under

previously entered dissolution decree). Therefore, we reject Kim's first assignment of error.

## 2. CROSS-APPEAL

■ We next address Grant's argument, improperly presented as a cross-appeal, that the "trial court erred in taking judicial notice of the entire court file without specifying which facts or documents it was judicially noticing." Brief for appellee at 33. See *Wasikowski v. Nebraska Quality Jobs Bd.*, 264 Neb. 403, 648 N.W.2d 756 (2002) (cross-appeal must ask for affirmative relief, which means reversal, vacation, or modification of lower court's judgment, decree, or final order). He asks us, in our review of the case, to disregard this court file, marked in its entirety as exhibit 4.

■ Judicial notice of adjudicative facts is governed by Neb. Evid. R. 201, Neb. Rev. Stat. § 27-201 (Reissue 1995). *J.B. Contracting Servs. v. Universal Surety Co.*, 261 Neb. 586, 624 N.W.2d 13 (2001). Adjudicative facts within the meaning of § 27-201 are simply the facts developed in a particular case, as distinguished from legislative facts, which are established truths, facts, or pronouncements that do not change from case to case but apply universally. *Hagelstein v. Swift-Eckrich*, 257 Neb. 312, 597 N.W.2d 394 (1999). In other words, the adjudicative facts are those to which the law is applied in the process of adjudication. *Id.*

■ We have further stated that a court may take judicial notice of adjudicative facts which are not subject to reasonable dispute, either because they are (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *Wolgamott v. Abramson*, 253 Neb. 350, 570 N.W.2d 818 (1997); *In re Interest of C.K., L.K., and G.K.*, 240 Neb. 700, 484 N.W.2d 68 (1992). See § 27-201. Grant acknowledges that exhibit 4 would contain facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. He argues, however, that these facts must be individually marked, identified, and made a part of the record, and that an entire file cannot exist as a judicially noted *fact* as contemplated by § 27-201.

■ When cases are interwoven and interdependent and the controversy involved has already been considered and determined by the court in the former proceedings involving one of the parties now before it, the court has a right to examine its own records and take judicial notice of its own proceedings and judgments in the former action. *J.B. Contracting Servs. v. Universal Surety Co., supra.* Nevertheless, in *In re Interest of C.K., L.K., and G.K.*, 240 Neb. at 709, 484 N.W.2d at 73, we stated that " '[c]are should be taken by the court to identify the fact it is noticing, and its justification for doing so.' " (Quoting *Colonial Leasing etc. v. Logistics Control G.I.*, 762 F.2d 454 (5th Cir. 1985).) Thus, we disapproved of the trial court's simply taking notice of all pleadings, adjudication, and records that were admissible in two prior proceedings involving the parties before the court. Those proceedings involved 36 exhibits and 490 pages of transcription, and we explained that "[w]ithout cryptesthesia or telepathy, we are unable to ascertain just what fact or facts were judicially noticed by the trial court." *In re Interest of C.K., L.K., and G.K.*, 240 Neb. at 710, 484 N.W.2d at 73. Consequently, we conducted our de novo review exclusive of the material which "may have been" the subject of the trial court's "judicial notice." *Id.* at 711, 484 N.W.2d at 74. See, also, *State v. Ryan*, 233 Neb. 74, 444 N.W.2d 610 (1989) (entire trial record cannot be said to fall within definition of judicially noted fact as set out in § 27-201(2)).

Here, the district court was correct in formally introducing its prior proceedings into evidence and making such evidence a part of the record. See, *In re Interest of C.K., L.K., and G.K., supra*; *Gottsch v. Bank of Stapleton*, 235 Neb. 816, 458 N.W.2d 443 (1990). It should have done so, however, by individually noticing those elements considered relevant and competent for the issues presented. Still, any error committed by the district court is clearly harmless because our review, as will be seen below, presents only questions of law. See *Husen v. Husen*, 241 Neb. 10, 487 N.W.2d 269 (1992). We need not decide in a de novo review whether to disregard the entire file presented in this case, because the facts contained therein are irrelevant to our analysis.

### 3. SETTLEMENT PROVISION

■ Having addressed the preliminary issues, we now address the merits of the dispute before us. Kim did not appeal the dissolution decree providing for the $75,000 conditional judgment, and Grant argues that Kim is attempting an impermissible collateral attack on the judgment. Where parties to a divorce action voluntarily execute a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, its provisions will not thereafter be vacated or modified in the absence of fraud or gross inequity. See, *Peter v. Peter*, 262 Neb. 1017, 637 N.W.2d 865 (2002); *Gruber v. Gruber*, 261 Neb. 914, 626 N.W.2d 582 (2001).

■ Nevertheless, a void judgment may generally be attacked at any time in any proceeding. See *Ryan v. Ryan*, 257 Neb. 682, 600 N.W.2d 739 (1999). Certainly, if the provision in question were void, there would be nothing upon which could lie the current determination of amounts due and garnishment. See, e.g., *J.K. v. Kolbeck*, 257 Neb. 107, 595 N.W.2d 875 (1999) (by plain language of Neb. Rev. Stat. § 25-1056 (Cum. Supp. 2004), garnishment in aid of execution is only available when judgment has been entered). See, also, *State v. Wessels and Cheek*, 232 Neb. 56, 439 N.W.2d 484 (1989) (using void conditional judgment doctrine in collateral attack).

### (a) Contract or Judgment

■ In arguing that the $75,000 provision is a void conditional judgment, Kim first rejects the district court's characterization of the provision as being a provision in a contract and not of a judgment. If the provision were part of a contract and not a judgment, it would not be void under the void conditional judgment rule. Absent contrary public policy, it is established that a contract may be conditioned upon the occurrence or nonoccurrence of an act or event. See *Henriksen v. Gleason*, 263 Neb. 840, 643 N.W.2d 652 (2002).

■ In *Chamberlin v. Chamberlin*, 206 Neb. 808, 818, 295 N.W.2d 391, 397 (1980), we held that a dissolution decree which approved and incorporated into the decree the parties' property settlement, alimony, and child support agreement was

a "judgment of the court itself." We accordingly rejected the wife's argument that the decree was a consent judgment and that as such, the court was without power to modify the decree over the objection of one of the parties. We noted that consent judgments constituted the agreement of the parties and were simply made a matter of the record by the court at their request. In consent judgments, the court does not inquire into the merits or equities of the case, and the only questions to be determined are whether the parties are capable of binding themselves by consent and whether they have actually done so.

In contrast, we noted that before issuing a dissolution decree, the court is required to approve the provisions of the settlement agreement and to examine into the merits of the matter before it, including the question of whether the marriage is irretrievably broken. See *Chamberlin v. Chamberlin, supra.* See, also, *Jones v. Hubbard*, 356 Md. 513, 740 A.2d 1004 (1999) (even consent judgment is "judgment" or "judicial act" by court because critical element of judicial conclusiveness is added to contractual act, and its only distinction is that it is entered at request of parties); *Henderson v. Henderson*, 307 N.C. 401, 407, 298 S.E.2d 345, 350 (1983) (contractual character of settlement agreement is "subsumed into the court-ordered judgment"). We conclude that the $75,000 provision in question is part of a judgment, and we thus consider the applicability of the void conditional judgment rule and whether the $75,000 provision is void.

(b) Void Conditional Judgment Rule

Neb. Rev. Stat. § 25-1301 (Cum. Supp. 2004), defines a judgment as "the final determination of the rights of the parties in an action." We have elaborated that a "judgment" is a court's final consideration and determination of the respective rights and obligations of the parties to an action as those rights and obligations presently exist. *Village of Orleans v. Dietz*, 248 Neb. 806, 539 N.W.2d 440 (1995). Thus, we have held that orders purporting to be final judgments, but that are dependent upon the occurrence of uncertain future events, do not operate as "judgments" and are wholly ineffective and void as such. See *Kroll v. Department of Motor Vehicles*, 256 Neb. 548, 590 N.W.2d 861 (1999). These "conditional judgments" are not final

determinations of the rights and obligations of the parties as they presently exist, but, rather, look to the future in an attempt to judge the unknown. *Village of Orleans v. Dietz, supra.* We have held that a conditional judgment is wholly void because it does not "perform in praesenti" and leaves to speculation and conjecture what its final effect may be. *Id.*

While conditional orders will not automatically become final judgments upon the occurrence of the specified conditions, see *Lemburg v. Adams County*, 225 Neb. 289, 404 N.W.2d 429 (1987), they can operate in conjunction with a further consideration of the court as to whether the conditions have been met, at which time a final judgment may be made. See *Custom Fabricators v. Lenarduzzi*, 259 Neb. 453, 610 N.W.2d 391 (2000). In *Lenarduzzi*, we attempted to resolve any confusion arising from the use of the term "wholly void," explaining that conditional orders are not void as *interlocutory* orders, but are void only insofar as they purport to be final judgments. We stated that conditional interlocutory orders do not perform in praesenti and do not have force and effect *as a final order or judgment from which an appeal can be taken.* Nevertheless, they can operate, for instance, as an order properly scheduling the completion of pretrial tasks, the failure of which to meet subjecting the parties to possible sanction as the facts may warrant. Such orders cannot operate as final, appealable judgments without further court consideration regarding the task or obligation that was purportedly not met, however, "because parties should not be left to guess or speculate as to the final effect of a conditional interlocutory order." *Id.* at 461, 610 N.W.2d at 397. See, generally, *2-H Ranch Co., Inc. v. Simmons*, 658 P.2d 68 (Wyo. 1983) (explaining that conditional judgments are more properly termed "nonexistent," but that law governing execution on void judgments is still applicable because, like judgment void for lack of jurisdiction or voidable as erroneous, such judgments are entitled to no force or effect).

Traditionally, cases decided under our void conditional judgment rule have been actions at law purporting to make a final judgment of dismissal, contempt, suspension, injunction, or other, but expressly conditioning said "judgment" upon a specified future action or inaction of one of the parties. See, e.g.,

*Village of Orleans v. Dietz,* 248 Neb. 806, 539 N.W.2d 440 (1995); *County of Sherman v. Evans,* 247 Neb. 288, 526 N.W.2d 232 (1995); *Schaad v. Simms,* 240 Neb. 758, 484 N.W.2d 474 (1992); *W & K Farms v. Hi-Line Farms,* 226 Neb. 895, 416 N.W.2d 10 (1987); *Federal Land Bank of Omaha v. Johnson,* 226 Neb. 877, 415 N.W.2d 478 (1987); *Fritch v. Fritch,* 191 Neb. 29, 213 N.W.2d 445 (1973). But we have not expressly addressed the applicability of the void conditional judgment rule to actions in equity. Since the dissolution decree before us was entered by a court acting in equity, we consider that issue now.

(c) Are Conditional Judgments Void in Actions at Equity?

We have explained that courts of equity are not always restricted by the same rules as courts of law. See, *Trieweiler v. Sears,* 268 Neb. 952, 689 N.W.2d 807 (2004); *Drake v. Morrow,* 140 Neb. 258, 299 N.W. 545 (1941). Where a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation. *Trieweiler v. Sears, supra.* An action in equity vests the trial court with broad powers authorizing any judgment under the pleadings. *Ludwig v. Matter,* 210 Neb. 87, 313 N.W.2d 234 (1981); *Lippire v. Eckel,* 178 Neb. 643, 134 N.W.2d 802 (1965).

In *Gerow v. Covill,* 192 Ariz. 9, 960 P.2d 55 (Ariz. App. 1998), the court explained that equitable judgments constitute an exception to the general rule that conditional judgments are void. The court accordingly upheld a dissolution judgment ordering that ownership of stock for a company fraudulently conveyed "shall" be changed to reflect the former wife's one-half interest "upon" resolution against the registered owner that the stock ostensibly in her name was in fact owned by the former husband. The court rejected the husband's contention that such an order was void because it was conditional, explaining that the trial court was merely using its power as an equity court to adapt its relief and mold its decree to satisfy the requirements of the case and to conserve the equities of the parties. *Id.* The court stated: " 'When a court of equity renders a conditional decree . . . [i]t is simply adjusting the equities between the parties and granting to one or the other certain relief to which the litigants may be entitled.' "

*Id.* at 13-14, 960 P.2d at 59-60 (quoting *Mason v. Ellison,* 63 Ariz. 196, 160 P.2d 326 (1945)).

The weight of authority in other jurisdictions has either explicitly or implicitly refused to extend the void conditional judgment rule into the realm of equity. See, e.g., *County of Tulare v. Ybarra,* 143 Cal. App. 3d 580, 192 Cal. Rptr. 49 (1983); *Hull v. Bowest Corp.,* 649 P.2d 334 (Colo. App. 1982); *Valley Builders, Inc. vs. Stein, et ux.,* 41 Del. Ch. 259, 193 A.2d 793 (1963); *Kessler v. Tortoise Development, Inc.,* 134 Idaho 264, 1 P.3d 292 (2000) (court of equity, being court of conscience, is capable of rendering conditional decree in action for specific performance); *Lewis et al. v. Romine et al.,* 128 Ind. App. 564, 151 N.E.2d 156 (1958); *Scheldrup v. Gaffney,* 243 Iowa 1297, 1303, 55 N.W.2d 272, 275 (1952) (stating that "[t]his court has held in many cases that the rule that conditional judgments are wrong has no application to decrees in equity"); *Pepperell Trust Co. vs. Mehlman et al.,* 155 Me. 318, 154 A.2d 161 (1959); *Rymland v. Berger,* 242 Md. 260, 219 A.2d 7 (1966); *Southern Four v. Parker,* 81 Md. App. 85, 566 A.2d 808 (1989); *LaChapelle v. Mitten,* 607 N.W.2d 151 (Minn. App. 2000) (conditional custody awards not precluded when in child's best interests); *Hayes v. Gallacher,* 115 Nev. 1, 972 P.2d 1138 (1999); *Singer v. New Belfort Apts.,* 79 N.Y.S.2d 464 (1948) (court of equity is court of conscience capable of rendering conditional decree); *Whedon v. Whedon,* 58 N.C. App. 524, 294 S.E.2d 29 (1982); *McEntire v. McEntire,* 107 Ohio St. 510, 140 N.E. 328 (1923); *Stephen v. Stephen,* 937 P.2d 92 (Okla. 1997) (in its powers to equitably settle conflicting rights, court may attach such reasonable conditions to custody orders as seem proper); *Phila. Marine T. A. v. Longshoremen,* 453 Pa. 43, 308 A.2d 98 (1973); *DeCoria v. Red's Trailer Mart,* 5 Wash. App. 892, 491 P.2d 241 (1971) (in action for rescission in equity, court had power to see that substantial justice was effected by making decree of rescission conditional if need be); *In re Marriage of Schwantes v. Schwantes,* 121 Wis. 2d 607, 360 N.W.2d 69 (Wis. App. 1984). But see, *Hero v. Hero,* 714 So. 2d 868 (La. App. 1998); *Reynolds v. Reynolds,* 109 S.W.3d 258 (Mo. App. 2003).

In iterating the conditional judgments rule in *Lemburg v. Adams County,* 225 Neb. 289, 292, 404 N.W.2d 429, 431 (1987), we stated that "generally, final judgments must not be

conditional, and *unless there is an equitable phase of the action wherein it is necessary to protect the interests of defendants,* a conditional judgment is wholly void." (Emphasis supplied.) See, also, *State v. Moore,* 258 Neb. 199, 602 N.W.2d 465 (1999); *Schaad v. Simms,* 240 Neb. 758, 484 N.W.2d 474 (1992); *Romshek v. Osantowski,* 237 Neb. 426, 466 N.W.2d 482 (1991). This statement by our court has at its crux the inapplicability of the void conditional judgment rule either to actions at equity or to equitable relief granted within an action at law. It was originally derived from *Benton v. Alcazar Hotel Co.,* 354 Mo. 1222, 194 S.W.2d 20 (1946), and *Seeger v. Odell,* 18 Cal. 2d 409, 115 P.2d 977 (1941), both cases explicitly allowing conditionality in equity. In *Seeger,* the court noted: "It is well established . . . that a court granting equitable relief has the power to make its decrees contingent upon compliance . . . with certain conditions." 18 Cal. 2d at 417-18, 115 P.2d at 982.

Consistent with that principle, we have approved of equitable judgments that otherwise would have been considered conditional and void. See, *Wood v. Wood,* 266 Neb. 580, 581, 667 N.W.2d 235, 238 (2003) (affirming district court's judgment enforcing decree's provision, through settlement agreement, that " '[i]n the event' " any children were to elect to pursue further education after graduation from high school, including college or vocational training, husband agreed to be responsible for one-half of such expenses for each child, including tuition, books, and room and board); *Simons v. Simons,* 261 Neb. 570, 624 N.W.2d 36 (2001) (upholding decree that stated that former husband's support obligation was to begin on day he was released from prison).

In *Vogel v. Vogel,* 262 Neb. 1030, 637 N.W.2d 611 (2002), we held to be void the conditional provisions of a dissolution decree, although we did so without considering the general propriety of applying such a rule in equity. In *Vogel,* the trial court's modification order set forth certain alternative custody arrangements contingent upon the event that either (1) the parents return to living within 50 miles of one another or (2) the mother's husband, who worked for the military, were transferred outside the United States. We concluded that these further orders were conditional. They did not "perform in praesenti," but, rather, would become

effective only upon the happening of certain future events which may or may not occur. After finding the void conditional provisions severable from the valid portion of the trial court's order, we ordered such portions vacated. See *id.*

However, our reasoning in *Vogel* was premised on considerations other than the conditional nature of the order. Instead of simply concluding that the provisions of the order were void because they failed to perform in praesenti, we stated, in effect, that the conditional order was not appropriate because it was unnecessary and unwise to speculate as to the best interests of the child under changed circumstances. The contingent provisions presented in *Vogel* were contrary to a proper assessment of the best interests of the child, which is paramount in custody determinations. We stated: "The impact of such potential events on the children's best interests and the proper judicial response to the potential events identified in the orders complained of are better assessed at the time of their occurrence." 262 Neb. at 1039, 610 N.W.2d at 619-20. In other words, because there is a statutory allowance for modification in the future upon changed circumstances, the conditional judgment in *Vogel* was not only unnecessary to resolve the equities presented, but was contrary to an equitable resolution. See, also, *Burch v. Burch*, 805 S.W.2d 341 (Mo. App. 1991) (provisions of dissolution decrees which order automatic change in child custody upon happening of some future event have consistently been held unenforceable because of failure to provide for consideration of circumstances existing at time of automatic change).

We now expressly hold that the void conditional judgment rule does not extend to actions in equity or to equitable relief granted within an action at law. Rather, where it is necessary and equitable to do so, a court of equitable jurisdiction may enter a conditional judgment and such judgment will not be deemed void simply by virtue of its conditional nature. Conditional judgments are a fundamental tool with which courts sitting in equity have traditionally been privileged in order to properly devise a remedy to meet the situation. We will not take away that tool by extending our void conditional judgment rule into the realm of equity. Rather, we follow the numerous decisions from other jurisdictions, set forth above, and precedent by

this court that recognizes that a strict prohibition against conditional judgments is inappropriate to equitable relief.

That having been established, we accordingly conclude that the provision at issue in this case is not per se void due to its conditional nature. We note, however, that simply because a conditional judgment in an action at equity is not automatically void, it does not follow that all conditional judgments are acceptable on direct review or that judgments in equity cannot, for different reasons, be void and therefore subject to collateral attack. Certain conditional judgments may still be considered erroneous or an abuse of discretion, be set aside where procured by fraud, or be considered void as contrary to statute or public policy.

Perhaps most relevant, conditional judgments in equity are required to determine the rights and obligations of the parties with reasonable certainty. Thus, in *Breiner v. Breiner*, 195 Neb. 143, 236 N.W.2d 846 (1975), we found a child support modification to be insufficiently definite and certain where the court ordered child support with amounts for subsequent years based on a formula to be applied to whatever the amount of the father's bonus would be in any given year. While we recognized that other jurisdictions have permitted this type of decree, we explained that the decree should be more definite and certain in order to facilitate proper enforcement. While the need for computation itself was not objectionable, "an extraneous fact unknown until the end of the year" was necessary to compute the amount of child support. *Id.* at 146, 236 N.W.2d at 848. We were concerned that "[u]nnecessary administrative difficulties would be created," because the proceedings involving the particular parties before us had been "acrimonious, to say the least," and that it seemed possible the parties would end up in court every year litigating differences as to the amount of the bonus. *Id.* See, also, *Castonguay v. Plourde*, 46 Conn. App. 251, 699 A.2d 226 (1997) (judgment must so dispose of matters in issue that parties will be able to determine with reasonable certainty and clarity what is prohibited or required); *Wolf v. Murrane*, 199 N.W.2d 90 (Iowa 1972) (judgment must be certain and in intelligible form so that parties understand adjudication); *Pearson v. Pearson*, 369 S.W.2d 272 (Mo. App. 1963); *Morrow v. Morrow*, 94 N.C. App. 187, 379 S.E.2d 705 (1989)

(judgment must not be so vague and uncertain as to be unenforceable); *Kimsey v. Kimsey*, 965 S.W.2d 690 (Tex. App. 1998) (divorce decree must delineate terms of compliance in clear, specific, and unambiguous terms so that parties will readily know exactly what duties are imposed on them).

However, such limitations on an equity court's usage of conditional provisions in its judgments are unlikely to arise in the variety of conditional terms that parties regularly draft in the process of reaching a mutually satisfactory settlement agreement. Generally, the division of property in a dissolution case is based on equitable principles, and its purpose is to divide the marital assets equitably. *Medlock v. Medlock*, 263 Neb. 666, 642 N.W.2d 113 (2002). Where the property division is made pursuant to a voluntary agreement by the parties, a further equitable consideration arises as to the need to protect the parties' bargaining power and the benefit of a bargain once made. As the court in *McInnis v. McInnis*, 199 Or. App. 223, 231, 110 P.3d 639, 643 (2005), described: " 'Where parties have foregone [sic] their opportunity to litigate disputes and have chosen instead to enter into an agreement, their reliance on the agreement can be presumed. Inequity may result if this court adopts a policy of less than full enforcement of mutually agreed upon property and support agreements.' " (Quoting *McDonnal and McDonnal*, 293 Or. 772, 652 P.2d 1247 (1982).) Similarly, the court in *Marriage of Coyle*, 61 Wash. App. 653, 811 P.2d 244 (1991), after finding voidable the alimony provision, upheld a property settlement condition providing the wife with a new car every year for 15 years unless she remarried or the husband sold his car dealership before that time, at which point, the wife would be entitled to a lifetime award of the car she was then driving. The court explained that unlike alimony, a property division "simply disposes of the property of the parties . . . presumably upon an equitable basis" and that a "property division cannot always be conveniently effected by a present allocation of property to each party." *Id.* at 660-61, 811 P.2d at 248.

*Byrne v. Ackerlund*, 108 Wash. 2d 445, 739 P.2d 1138 (1987), presents a conditional provision somewhat similar to the case at bar. In *Byrne*, the court addressed an appeal from a declaratory judgment action seeking enforcement of liens on the husband's

portion of the marital property which were payable only upon the voluntary or involuntary sale or transfer of the property. Although no sale or transfer had occurred, the wife argued for an immediate accounting and partition on the ground that not to do so violated the governing statute providing that parties to a dissolution action had the right to have their respective interests in property " 'definitely and finally determined,' without the prospect of future litigation." *Id.* at 449, 739 P.2d at 1140. The superior court had granted summary judgment in the wife's favor, but the Supreme Court of Washington reversed, finding that the necessity under applicable law for a definite and final determination was "satisfied by a specific disposition of each asset which informs the parties of what is going to happen to the asset and upon what operative events, *e.g.*, that a set sum or formula of money will be paid upon the sale of certain property." *Id.* at 451, 739 P.2d at 1141. It was not necessary that such operative events be certain to occur.

In so concluding, the court pointed out that the lien in issue arose out of a voluntary and mutually beneficial property settlement agreement which was incorporated by the court into the dissolution decree. The court noted that under the governing statute specifying that the rights be determined without the prospect of future litigation, it might have been inappropriate for the dissolution court to order such a division of property if the parties had not agreed to it, increasing the possibility of future strife. However, the court found that such heightened prospects for future litigation were not present where the agreement was entered into voluntarily and that the dollar amount was fixed and enforceable only upon the occurrence of a particular event.

Moreover, the court noted that to hold such a provision insufficiently definite would have "dangerous implications." *Byrne v. Ackerlund*, 108 Wash. 2d at 450, 739 P.2d at 1141. "It would severely impede spouses' freedom to contract for mutually advantageous property settlements and would effectively require dissolution courts to order the sale of principal assets by some particular date, a practice this court has previously frowned upon." *Id.* at 450-51, 739 P.2d at 1141.

The $75,000 provision at issue in the instant case was the product of negotiations and agreement by the parties, and was

found by the court to be part of a fair and reasonable settlement agreement. No appeal was taken from that determination. Even assuming that a provision can be subject to collateral attack as insufficiently definite to be enforceable, the provision at issue here was an appropriate exercise of the court's equitable powers. We can find no reason to now consider that provision void. We accordingly reject Kim's second assignment of error.

#### 4. WHETHER CONDITION WAS SATISFIED

Having determined that the $75,000 conditional judgment is not void, we must now determine whether the conditions have, in fact, been satisfied. The provision in issue states:

> [I]f at any time said real property is sold, transferred, gifted, conveyed, foreclosed upon, or for any other reason or in any other manner conveyed, whether voluntarily or involuntarily by the Respondent [(Kim)] to any third party, Petitioner [(Grant)] shall receive the additional sum of $75,000 which shall accrue no interest until due. This additional sum of $75,000 shall only be due to the Petitioner by the Respondent if said property is sold or conveyed as described above, during the Petitioner's lifetime. If said real property is sold or transferred as described above, after the Petitioner's death, Petitioner shall not be entitled to the additional sum of $75,000, but the initial sum of $50,000, together with interest, shall be due to the Petitioner or his estate.

Grant contends, and the district court found, that by executing a deed from herself as sole owner of the subject property to herself and to Roger as joint tenants, Kim "transferred" or "conveyed" the property under the unambiguous language of the agreement, and the condition underlying the $75,000 judgment was thus met.

Kim argues that the provision is unambiguous, but that a "reasonable interpretation" of the provision "would require an understanding that the parties agree that Kim did not have adequate assets from which to pay an additional $75,000.00 judgment and that this would only be paid if she sold the property" or if she predeceased Grant. Brief for appellant at 17. Additional language was added merely to prevent Kim from being able to gift the property to a third party to avoid triggering the $75,000

judgment. Kim reads into the terms "convey," "transfer," and "gift" the need for a complete divestiture of her ownership interest. Since the deed in joint tenancy did not divest Kim of her interest to the property, she asserts that the condition to the $75,000 judgment was not met.

The meaning of the decree presents a question of law, in connection with which we reach a conclusion independent of the determination reached by the court below. See *Holm v. Holm*, 267 Neb. 867, 678 N.W.2d 499 (2004). We conclude that the term "convey" is unambiguous and that it describes the joint tenancy warranty deed in question.

Kim does not argue that the deed was not strictly a "conveyance," but, rather, that the parties meant to further limit this term. While it may be that the terms of the agreement do not reflect her subjective intent at that time, and her subsequent actions would indicate that she did not understand the terms in this way, the language of the agreement itself simply does not limit its conditions precedent to the complete divestiture of Kim's interest in the property.

██ Where the language used in the agreement is unambiguous, we are bound to consider such language from the four corners of the agreement itself, and what the parties thought the agreement meant is irrelevant. See, *Klinginsmith v. Wichmann*, 252 Neb. 889, 567 N.W.2d 172 (1997) (once decree for dissolution becomes final, its meaning is determined as matter of law from four corners of decree itself); *Schrempp and Salerno v. Gross*, 247 Neb. 685, 529 N.W.2d 764 (1995) (extrinsic facts are allowed only when factual disputes and ambiguities exist regarding meaning of material terms in contract); *Universal Assurors Life Ins. Co. v. Hohnstein*, 243 Neb. 359, 500 N.W.2d 811 (1993) (after time for appeal has passed, meaning of dissolution decree is determined as matter of law from its language; neither what parties thought decree meant nor what judge intended is of any relevance); *Bokelman v. Bokelman*, 202 Neb. 17, 272 N.W.2d 916 (1979) (if language used in judgment is ambiguous, there is room for construction, but if language employed is plain and unambiguous, there is no room for construction or interpretation, and effect of decree must be declared in light of literal meaning of language used).

■ Ambiguity exists in a document when a word, phrase, or provision therein has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. See *Husen v. Husen,* 241 Neb. 10, 487 N.W.2d 269 (1992). In other words, a document is ambiguous if, after application of the pertinent rules of construction, there is uncertainty concerning which of two or more reasonable meanings represents the intention of the parties. *Id.* The fact that parties to a document have or suggest opposing interpretations of the document does not necessarily, or by itself, compel the conclusion that the document is ambiguous. *Id.*

Black's Law Dictionary 357 (8th ed. 2004) defines "convey" as "[t]o transfer or deliver (something, such as a right or property) to another, esp. by deed or other writing; esp., to perform an act that is intended to create one or more property interests, regardless of whether the act is actually effective to create those interests." It defines a "conveyance" as "[t]he voluntary transfer of a right or of property." *Id.* It also defines a "conveyance" as "[t]he transfer of an interest in real property from one living person to another, by means of an instrument such as a deed." *Id.* at 358.

The Uniform Property Act, Neb. Rev. Stat. § 76-101 et seq. (Reissue 2003), defines the term "conveyance" as "an act by which it is intended to create one or more property interests, irrespective of whether the act is effective to create such interests, and irrespective of whether the act is intended to have inter vivos or testamentary operation." § 76-101. Section 76-118 of the Uniform Property Act states:

> (1) Any person or persons owning property which he, she, or they have power to convey, may effectively convey such property by a conveyance naming himself, herself, or themselves and another person or persons, as grantees, and the conveyance has the same effect as to whether it creates a joint tenancy, or tenancy in common, or tenancy in partnership, as if it were a conveyance from a stranger who owned the property to the persons named as grantees in the conveyance. . . . (3) Any person mentioned in this section may be a married person, and any persons so mentioned may be persons married to each other.

When the well-understood legal meaning of the term "convey" is considered, along with the definitions contained in Nebraska statutes, it is apparent that the language of the Settlement is not ambiguous and is not limited to circumstances in which Kim is completely divested of her interest in the property. Clearly, the joint tenancy warranty deed "conveyed" an interest "by" Kim to a third party, Roger. It is hard to imagine that Kim was unaware of this effect when even the deed itself describes that Kim therein "conveys" the property. Kim could have expressly limited the condition triggering the $75,000 judgment to conveyances wherein she completely divested herself of her ownership interest to the property in question; however, she did not do so, and we are bound by the unambiguous language of the agreement as it is written. Kim's third and final assignment of error is without merit.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's judgment.

AFFIRMED.