ROBERT G. EIHUSEN, APPELLEE, V.
LINDA K. EIHUSEN, APPELLANT.

723 N.W.2d 60

Filed October 27, 2006.   No. S-05-523.

David A. Domina and Claudia L. Stringfield-Johnson, of Domina Law, P.C., for appellant.

Pamela Hogenson Govier and Mark J. Milone, of Govier, Milone & Kinney, L.L.P., for appellee.

WRIGHT, CONNOLLY, GERRARD, McCORMACK, and MILLER-LERMAN, JJ., and IRWIN, Judge.

McCORMACK, J.

## NATURE OF CASE

Linda K. Eihusen appeals from an order of the district court denying her petition to vacate a decree previously entered in a marriage dissolution proceeding. She also appeals the district court's denial of her request for a jury trial.

## BACKGROUND

Robert G. Eihusen and Linda were married in 1975. At the time of their marriage, both Robert and Linda were working at Chief Industries, Inc., a Nebraska corporation located in Grand Island, Nebraska. During their marriage, Robert became the chairman, president, and chief executive officer of Chief Industries.

In 2000, Robert and Linda talked about ending their marriage and, while still living together, discussed the specifics of dividing their property and establishing financial support for Linda. Their discussions culminated in a settlement agreement which was drafted by the attorney for Chief Industries.

Under the terms of the settlement agreement, Linda was to receive a cash payment of $200,000, one-half of the parties' 401K plan, alimony in the amount of $5,000 per month for 240 months ($1.2 million), a Chevrolet Suburban, bank accounts maintained

in her name, miscellaneous personal property, $10,000 in attorney fees, all Chief Industries' common stock that had been gifted to her during the marriage, and one-half of those shares purchased during the marriage.

The settlement agreement also disposed of a Chief Industries' convertible debenture, which was awarded to Robert subject to the debenture's outstanding debt, which Robert assumed. Robert had held the debenture since 1996, when he loaned Chief Industries $5 million, which he himself had borrowed. Under the terms of the debenture, Chief Industries promised to pay Robert $5 million plus interest on the outstanding principal balance. Alternatively, Robert could elect to convert the debenture into Chief Industries' common stock. With regard to Robert's right of conversion, the debenture could not be converted into common stock until 2002. Thereafter, Robert had the right to convert 20 percent of the debenture into common stock in each of the years 2002 through 2006 at a $100-per-share option price. If Robert failed to exercise his conversion rights for any year, he would lose the right to convert that portion of the debenture into common stock. On appeal, Robert claims that he has not exercised any of his conversion rights. As a result, he has lost his right to convert 80 percent of the debenture into common stock.

In addition, the settlement agreement provided as follows:

> Each of the parties expressly certifies that [he or she has] entered into this Agreement upon mature consideration and after ample opportunity to seek the advice of separate counsel; that consent to the execution of this Agreement has not been by duress, fraud, or undue influence of any person; that no representations of facts have been made by either party to the other except as herein expressly set forth; that both parties have had full access to the books and records of the other and both parties have full knowledge as to the business affairs of each other and the nature, extent and value of the property of the other and that the parties agree that this Agreement is fair and reasonable and not unconscionable.

Linda took a copy of the agreement to a certified public accountant. After reviewing the document, the accountant advised Linda to talk to an attorney before she signed the agreement.

Linda did not do so, however, and on December 1, 2000, the parties' "Separation and Property Settlement Agreement" was signed and notarized.

In January 2001, Robert filed a petition for dissolution of marriage. In February, Linda hired an attorney. Linda's attorney testified that Linda sought his advice on whether the settlement agreement was fair and that no formal discovery was conducted. After Linda retained the attorney, only minor changes were made to the settlement agreement, including an agreement that Linda's stock in Chief Industries would be redeemed at $167 per share, the employee stock option plan (ESOP) price at the time. Linda and her attorney knew, therefore, that the price to redeem her stock, and the price of the ESOP, was $167 per share when the parties appeared before the district court.

In June 2001, Robert and Linda appeared before the district court with their respective attorneys. At that time, Linda testified that she had reviewed all the documents presented, including the separation agreement and property statement setting forth the value of Robert's assets, which had been prepared by Robert. She further testified that she believed the separation agreement to be fair and reasonable. On June 6, the district court entered a decree of dissolution and approved the parties' settlement agreement.

On November 12, 2002, Linda filed the present action with the district court seeking to set aside the divorce decree under Neb. Rev. Stat. § 25-2001 (Cum. Supp. 2004). Linda demanded a jury trial on all triable issues. In her petition, Linda alleged that the settlement agreement had been procured by fraud, coercion, and duress. The crux of Linda's fraud claim is the value the parties assigned to the Chief Industries' debenture. Linda claims that Robert committed a fraud with regard to the value attributed to the debenture. She argues that Robert concealed the true value of the debenture, which she contends is not the $5 million face value of the debenture claimed by Robert in the property statement, but, rather, $8.35 million. Linda computes this figure by multiplying the total number of shares Robert could have converted between 2002 and 2006 by the ESOP price at the time of their divorce in 2001, $167 per share, as opposed to the $100-per-share conversion price set forth in the debenture.

On July 15, 2004, the district court denied Linda's request for a jury trial. The court held that Linda's action to set aside the divorce decree was a continuation of the action to dissolve the parties' marriage and divide their property, which was an equitable action tried to the court. Thereafter, the matter proceeded as a bench trial on the merits. At trial, Linda withdrew her claim of duress and did not present any evidence on her claim of coercion. The case, therefore, was tried solely on the issue of whether the decree should be set aside on the basis of fraud.

On April 13, 2005, the district court found that no fraud had occurred and denied Linda's petition to vacate the decree. Linda filed this appeal.

## ASSIGNMENTS OF ERROR

Linda assigns as error, restated, the district court's denial of her request for a jury trial on the issues of fraud and the district court's denial of her petition to vacate the decree of dissolution.

## STANDARD OF REVIEW

■ An appellate court will reverse a decision on a motion to vacate or modify a judgment only if the litigant shows that the district court abused its discretion. *Roemer v. Maly*, 248 Neb. 741, 539 N.W.2d 40 (1995).

## ANALYSIS

### RIGHT TO JURY TRIAL

In her first assignment of error, Linda claims she was entitled to a jury trial on the issue of whether Robert committed fraud when he submitted the separation and property settlement agreement and failed to disclose what she contends to be the true value of the debenture, which she alleges is $8.35 million.

■ Article I, § 6, of the Nebraska Constitution provides that "[t]he right of trial by jury shall remain inviolate . . . ." We have explained that the purpose of this constitutional provision is to preserve the right to a jury trial as it existed at common law and under statutes in force when the Nebraska Constitution was adopted in 1875. *State ex rel. Cherry v. Burns*, 258 Neb. 216, 602 N.W.2d 477 (1999); *State ex rel. Douglas v. Schroeder*, 222 Neb. 473, 384 N.W.2d 626 (1986). At common law, legal claims were tried by a jury and equitable claims were tried by a court.

*Evans v. General Motors Corp.*, 277 Conn. 496, 893 A.2d 371 (2006). Accordingly, we have traditionally denied jury trials in equitable actions and provided jury trials as a matter of right in legal actions. *State ex rel. Cherry v. Burns, supra*; *State ex rel. Douglas v. Schroeder, supra*. As we stated in *Schroeder*, our task, therefore, becomes one of determining whether the action is of an equitable or legal nature. We make this determination from the action's main object, as disclosed by the averments of the pleadings and the relief sought. *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001).

While not explicitly part of the *Schroeder* test, our case law requires a court to look to the common law and statutes in force when the Nebraska Constitution was adopted. Decisions from other jurisdictions are in accord with this rule. The U.S. Supreme Court has stated that a court should consider the custom with reference to such questions before the merger of law and equity, the remedy sought, and the practical abilities and limitations of juries. *Ross v. Bernhard*, 396 U.S. 531, 90 S. Ct. 733, 24 L. Ed. 2d 729 (1970). The Kansas Supreme Court has described the test to determine whether an action is equitable as " 'whether the essential nature of the action is grounded on equitable rights and is one in which equitable relief is sought.' " *Vanier v. Ponsoldt*, 251 Kan. 88, 104, 833 P.2d 949, 961 (1992). The Connecticut Supreme Court has stated:

> "[A] court must ascertain whether the action being tried is similar in nature to an action that could have been tried to a jury . . . when the constitution was adopted. This test requires an inquiry as to whether the course of action has roots in the common law, and if so, whether the remedy involved was one in law or equity."

*Evans v. General Motors Corp.*, 277 Conn. at 510, 893 A.2d at 380. See, also, *Holt v. Parmer*, 106 Cal. App. 2d 329, 235 P.2d 43 (1951) (stating where case involves application of doctrines of equity and relief sought is equitable, parties are not entitled to jury trial).

The existence of the statutory right to vacate a judgment can be traced to 1867, prior to the adoption of the Nebraska Constitution. See Rev. Stat. § 602 (1867). The statutory provision as it read then is substantially similar to the version now in

effect. Since 1867, that provision, as now codified at § 25-2001, has bestowed upon a district court the power to vacate or modify its own judgment for one of nine enumerated reasons, including fraud. Since its enactment, the nature of this action has been equitable. As we described it in *In re Estate of West*, 226 Neb. 813, 833, 415 N.W.2d 769, 783 (1987), an action under § 25-2001 is "equitable in character, available or administered on equitable principles, and extended on equitable terms." Moreover, the relief provided by this statute—the vacation or modification of a judgment—is not legal in nature, but, rather, is equitable. See, e.g., *In re Estate of West, supra*. We conclude, therefore, that an action to set aside a judgment or order under § 25-2001 invokes the equitable powers of the court, for which there exists no constitutional right to a jury trial.

### PETITION TO VACATE

In her second assignment of error, Linda contends that the district court erred by refusing to vacate the decree of dissolution on the basis of fraud.

In order to set aside a judgment after term on the ground of fraud practiced by the successful party, as provided for in § 25-2001(4), the petitioning party must prove that due diligence was exercised by him or her at the former trial and that the failure to secure a just decision was not attributable to his or her fault or negligence. *McCarson v. McCarson*, 263 Neb. 534, 641 N.W.2d 62 (2002). Under the rule announced in *McCarson*, it must be clear that the alleged failure to secure a just decision was attributable only to Robert's misrepresentation, and not to any fault or negligence by Linda.

In *Caddy v. Caddy*, 218 Neb. 582, 358 N.W.2d 184 (1984), we affirmed the denial of a motion to vacate or modify a divorce decree, which motion was premised on the appellee's purported submission of a false financial statement that left out certain real property accumulated during the parties' marriage. We concluded that the appellant had failed to exercise due diligence. We noted that the appellant had testified that she was aware at the time of the dissolution proceeding of the existence of the property allegedly concealed, though she was not aware of the exact value of that property. We concluded that the appellant's motion

was properly denied because she "chose to proceed without adequate representation and with at least a general knowledge of the underlying facts, and made no effort to bring before the court the correct information." *Id.* at 584, 358 N.W.2d at 186.

Similarly, the evidence here reveals that during the settlement negotiations and throughout the subsequent divorce proceeding, Linda was aware of the existence of the debenture. Prior to signing the settlement agreement, Linda sought the advice of an accountant who, in turn, advised her to seek legal advice before signing the agreement. Linda elected not to do so. After the agreement was signed and Robert had filed a petition for dissolution, Linda finally hired an attorney, as the attorney later testified, to obtain his opinion on the fairness of the settlement agreement. At that time and all times preceding, Linda had the same avenues of discovery which she has employed in the present appeal, but elected not to utilize them to her advantage. That is not to say, however, that no inquiries were made into the fairness of the agreement or that no modifications were made after the agreement was signed. In fact, Linda and her attorney negotiated for the redemption of her common stock in Chief Industries at the ESOP price of $167 per share, which was not originally provided for in the settlement agreement. It is that price which Linda now uses as the basis for valuing the debenture at $8.35 million.

On her own volition, Linda proceeded through the settlement negotiations and divorce proceeding without making any effort to ascertain what she now asserts to be the true value of the debenture, despite a general knowledge of the debenture and the ESOP price per share. Under these facts, we cannot conclude that Linda exercised the requisite due diligence and, therefore, cannot say that the district court abused its discretion in denying Linda's petition to vacate. Accordingly, we affirm the denial of Linda's petition to vacate the decree of dissolution.

## CONCLUSION

For the reasons discussed above, we affirm the decision of the district court in all respects.

AFFIRMED.

INBODY, Chief Judge, participating on briefs.
HENDRY, C.J., and STEPHAN, J., not participating.