275 Neb. 810
DON DUANE NIELSEN, PERSONAL REPRESENTATIVE OF THE ESTATE OF BARBARA JEAN NIELSEN, APPELLANT AND CROSS-APPELLEE,
v.
DONALD E. NIELSEN, APPELLEE AND CROSS-APPELLANT.
No. S-07-312.
Supreme Court of Nebraska.
Filed May 30, 2008.
Richard J. Thramer for appellant.
Mark D. Fitzgerald, of Fitzgerald, Vetter & Temple, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY OF CASE
The personal representative of Barbara Jean Nielsen's estate (the Estate) petitioned to vacate the marital estate distribution in a 1989 dissolution decree. The decree dissolved the marriage of Barbara and Donald E. Nielsen. The Estate claimed that Donald obtained the decree by fraud and that the parties' property settlement agreement did not accurately reflect the marital estate's value. The district court dismissed the Estate's petition. The court concluded the Estate failed to prove that Barbara acted with due diligence in determining the value of the marital estate during the divorce proceeding. We agree with the district court and affirm.

BACKGROUND
Donald and Barbara were married in 1951. They had three sons. In the mid-1970's, Donald incorporated Nielsen Oil and Propane, Inc. (Nielsen Oil). Donald and Barbara were the shareholders of Nielsen Oil. Donald held an 80-percent interest, and Barbara held the remaining 20 percent. Donald ran the business, and Barbara was the company's bookkeeper.
About 1980, Barbara was diagnosed with breast cancer. But she continued to work for Nielsen Oil, as her health allowed, until 1987 or 1988. In 1988, she met with attorney Ronald K. Parsonage to discuss estate planning and the possibility of pursuing a divorce. Barbara suggested to Parsonage that Donald was hiding assets from her. Parsonage's file is in the record. The file contains a notarized affidavit of Barbara stating that she had transferred title to property to Donald and others because he inflicted duress upon her and undue influence over her. The affidavit also stated she had reason to believe Donald had forged her name on "numerous" documents of title and had transferred the property to the "detriment" of Barbara.

BARBARA FILES FOR DISSOLUTION
In September 1989, Barbara filed for divorce. William Line represented Barbara, and Clarence Mock represented Donald. In November, the parties signed a property settlement agreement. The settlement agreement awarded most of the parties' real and personal property to Donald and required Donald to pay (1) $625,000 cash to Barbara; (2) $15,000 in attorney fees to Barbara's attorney, Line; and (3) Barbara's medical expenses for the remainder of Barbara's life. The settlement agreement included an acknowledgment that each party was aware of the other's financial position and that there had been a full disclosure of the financial assets of both parties.

DISSOLUTION HEARING
Barbara's health was deteriorating, and she could not attend the final hearing on November 20, 1989. At the hearing, Donald testified that the settlement agreement fully, fairly, and equitably divided the marital estate. The court asked for a property statement, but Line stated he had not brought one with him. He then stated:
[Barbara] is in extremely poor health. I have gone over it in considerable length with her. I can assure the Court that I have fully advised her of her rights and fully analyzed the property and I believe this to be in her best interest because of her extremely frail health.
The parties' attorneys then stipulated, "from their independent investigations," that the value of the marital estate was between $1 million and $3 million. The court entered a decree approving the settlement agreement. The same day, Donald paid Barbara the $625,000 and Barbara executed a will devising all her property to the couple's three sons. On July 24, 1990, Barbara died.

ESTATE PETITIONS TO VACATE
Almost 15 years later, in March 2004, the Estate petitioned to vacate the dissolution decree. The Estate alleged that Donald obtained the decree by fraud. It alleged that he never fully informed Barbara of the value and investments composing the marital estate. It further alleged that Donald, Mock, and Line conspired to conceal the value and extent of the marital estate from Barbara and the court. According to the Estate, Donald obtained Line's cooperation by paying him $25,000, including the $15,000 in attorney fees in the settlement agreement. The Estate also alleged Barbara relied on a financial statement that did not list all the marital assets and that failed to reflect the fair market value of the assets. Finally, the Estate alleged that the personal representative first learned of the conspiracy and the extent of Donald's financial holdings at a meeting with Rodney Zwygart, Donald's accountant, in December 2001. Zwygart had contacted the personal representative and requested the meeting. The Estate's petition requested that the court vacate and set aside the decree's distribution of the marital estate and that it determine a fair and equitable division of the marital estate.
Donald moved for summary judgment. In resisting summary judgment, the Estate relied on Zwygart's affidavit. According to the Estate, Zwygart opined in his affidavit that at the time of the divorce proceedings, the marital estate had a fair market value between $60 million and $80 million. The court granted summary judgment for Donald. The court acknowledged that some evidence showed the marital assets were greater than the $1- to $3-million range stipulated by the parties. The court concluded, however, there was no evidence that the parties were dissatisfied with the property settlement or that Barbara was misled into signing the agreement. The Estate appealed.

ESTATE APPEALS, AND CAUSE REMANDED
In an unpublished decision, the Nebraska Court of Appeals reversed the district court's entry of summary judgment.[1] Viewing the evidence in the light most favorable to the Estate, the court concluded that Zwygart's deposition testimony presented material issues of fact. The Court of Appeals determined that material issues of fact existed regarding the true value of the marital estate and whether Barbara was fully aware of that value.
After a bench trial following remand, the district court entered judgment for the Estate in December 2006. The court decided that the Estate proved by clear and convincing evidence the theories of fraudulent concealment and fraudulent misrepresentation. The court determined that Donald underrepresented the marital estate's value and that a more accurate representation "would have been conservatively $4 million." The court rejected Donald's affirmative defenses.
Donald moved for a new trial. In a March 2007 order, the court sustained Donald's motion and dismissed the Estate's petition. The court stated that the reasoning in its December 2006 order was flawed in that it provided an incomplete analysis. The court explained that its prior order focused on Donald's conduct and did not consider whether Barbara acted with due diligence as required by Eihusen v. Eihusen.[2] Upon further consideration, the court determined Barbara did not exercise due diligence to determine the entire marital estate. According to the court, Barbara failed to do discovery that should have led to the disclosure of assets and their valuations. The court dismissed the Estate's petition. The Estate appeals.

ASSIGNMENTS OF ERROR
The Estate assigns, restated, that the district court erred in (1) concluding Barbara did not exercise due diligence to ascertain the entire value of the marital estate, (2) determining the marital estate had a value of $4 million, and (3) deciding Barbara was entitled to only 40 percent of the marital estate.
Donald's consolidated assignment of error on cross-appeal is that the district court erred in rejecting his affirmative defenses in its December 2006 order.

STANDARD OF REVIEW
An appellate court will reverse a decision on a motion to vacate or modify a judgment under Neb. Rev. Stat. § 25-2001(4)(b) (Cum. Supp. 2006) only if the litigant shows that the district court abused its discretion.[3]

ANALYSIS
The Estate's petition to vacate sought to set aside the marital estate distribution in the 1989 dissolution decree for fraud. The Estate contends that the district court erred in concluding that Barbara failed to exercise the requisite due diligence during the divorce proceeding.
Under § 25-2001(4)(b), a district court may vacate or modify its own judgments or orders after term for fraud practiced by the successful party in obtaining the judgment or order. But we have held that a party seeking to set aside a judgment after term for fraud under this section must prove that he or she exercised due diligence at the former trial and was not at fault or negligent in the failure to secure a just decision.[4] Here, the Estate must prove that the alleged failure to secure a just decision was attributable only to Donald's misrepresentation or concealment, and not to any fault or negligence of Barbara.[5]

APPLICABLE CASE LAW
In Caddy v. Caddy,[6] we affirmed the district court's denial of a motion to vacate or modify a divorce decree. There, the appellant had moved to vacate or modify the decree, alleging that during the divorce proceedings, the appellee had submitted a false financial statement that left out items of property. We concluded the appellant had failed to exercise due diligence. We observed that she later testified that at the divorce proceeding, she was aware of the existence of the property allegedly concealed, although she did not then know the property's exact value. We also noted that she had available to her the same avenues to discover the facts at trial as she employed for her motion to vacate. We decided the trial court properly denied her motion, because she "chose to proceed without adequate representation and with at least a general knowledge of the underlying facts, and made no effort to bring before the court the correct information."[7]
We similarly affirmed the denial of a petition to vacate a divorce decree for fraud in Eihusen. There, the appellant claimed the appellee procured the parties' settlement agreement by concealing the true value of a debenture listed in the property settlement. We noted that during the settlement negotiations and throughout the divorce proceeding, the appellant was aware of the debenture's existence. As in Caddy, we observed that during the negotiations and divorce proceeding, the appellant had the same means of discovery that she employed to support her motion to vacate. But she had elected not to use them to her advantage. We concluded that the appellant failed to exercise due diligence because she "proceeded through the settlement negotiations and divorce proceeding without making any effort to ascertain what she now asserts to be the true value of the debenture, despite a general knowledge of the debenture and the [share price she now uses as the basis for valuing the debenture]."[8]

RESOLUTION
We disagree with the Estate's attempt to distinguish our decisions in Caddy and Eihusen. The Estate contends that the appellants in those cases were aware of the allegedly concealed property at the time of the divorce proceedings but had failed to determine the property's value at that time. The Estate argues that here, Barbara was unaware of the existence of many assets. We find this distinction of little import. Although Barbara may not have been aware of all the assets in the marital estate, the evidence shows that a year before she filed for divorce, she had suggested to Parsonage, her attorney at the time, that she suspected Donald was hiding assets from her. Yet, the evidence fails to show that Barbara acted on those suspicions and exercised due diligence to determine the value of the marital estate during the settlement negotiations or divorce proceedings.
We recognize that Barbara's health was fragile, but she was represented by legal counsel during all the relevant proceedings. And although the Estate alleged that Barbara's attorney, Line, was involved in a conspiracy to conceal the value of the marital estate, the district court determined the evidence did not support such a finding. The Estate does not assign as error the district court's determination on that issue. So, in addition to Barbara's efforts, we will consider Line's efforts to conduct discovery on Barbara's behalf. As the district court observed, absent from the record is evidence that Barbara or Line conducted extensive discovery that should have led them to the disclosure of marital assets and the assets' valuations.
After Zwygart met with the personal representative in December 2001, one of the sons called Line, but Line hung up on him. After Line died, the Estate made discovery attempts to obtain Barbara's file, but was informed that Line's files were destroyed after his death. Therefore, the evidence about Line's discovery efforts came from others' testimony.
The record shows that Line submitted interrogatories to Donald. But Mock objected because there were more than 50 interrogatories, which violated the discovery rules. According to Mock, the court sustained his objection. This is the only evidence in the record of formal discovery conducted by Line. Mock also testified that Line had told Mock he had investigated Donald's properties and that he had copies of the parties' financial statements. But the record does not establish the extent of Line's investigations or identify any other discovery Line may have conducted. Zwygart, as Donald's accountant, was a seemingly likely source for information regarding the marital estate. Zwygart testified, however, that during the divorce proceedings, neither Barbara nor Line asked him to supply any financial documents. Nor did Barbara ever ask him about the value of the marital estate.
The Estate contends that the court "must measure requisite due diligence in light of the active fraudulent concealment and fraudulent misrepresentation"[9] that Donald was allegedly committing before and during the dissolution proceedings. But the record does not show that Donald's alleged misrepresentations or concealments prevented Barbara or Line from conducting an independent investigation into the marital estate and its value. For instance, no evidence shows that responses to discovery requests were fraudulent or untrue. The Estate's argument has little merit.
The Estate also contends that Barbara had a right to rely on the district court's order restraining the parties from transferring or concealing real or personal property assets. According to the Estate, Barbara "had a right to believe that Donald .. . had made full disclosure and that he would testify truthfully in [c]ourt."[10] Apparently, the Estate believes that the court's order somehow excused Barbara from exercising due diligence to independently determine the marital estate's value. The Estate, however, fails to provide any authority supporting its contention that the order excused Barbara from conducting an independent investigation.
A year before the divorce proceeding, Barbara suspected that Donald was hiding assets. The record, however, does not establish that she or Line made sufficient efforts to determine the value of the marital estate during the settlement negotiations or divorce proceedings. Without further evidence of Barbara's or Line's efforts to determine the marital estate's value, we cannot conclude that the Estate proved Barbara exercised the requisite due diligence. The record shows that Barbara's failure to secure a more favorable result was attributable to her failure to use discovery methods to uncover the assets and their value. And this failure to conduct discovery may have been intentional given her circumstances.
Admittedly, the record reflects that the marital estate might have been greater than the $1- to $3-million range stipulated by Line at the final hearing. But we cannot conclude that Line was negligent in representing Barbara. Because Barbara and Line are both dead, we cannot know why Barbara agreed to the settlement. The evidence suggests that settling for the lesser amount may have been Barbara's strategy because of her impending death. Mock testified that he had instructions from Donald that the divorce should be "done by the book" to draw out the divorce proceedings. The record suggests that the only property Barbara held solely in her name was a 20-percent minority interest in Nielsen Oil and that she sought the divorce to secure other marital assets she could pass to the couple's sons upon her death. This would not have occurred if Barbara had died before the divorce was complete. A reasonable inference is that Barbara agreed to the property settlement to complete the divorce before her impending death. At the final hearing, Mock explained to the court that "part of the reason for the settlement has to do with the result for estate planning purposes on her part." Line agreed that estate planning was "a strongly motivating factor" in agreeing to the settlement. Perhaps this strategy to quickly settle explains why neither Barbara nor Line conducted extensive discovery. We conclude that the district court did not abuse its discretion in denying the Estate's petition to vacate.

CONCLUSION
The Estate did not prove that Barbara exercised due diligence during the divorce proceeding. Nor did the Estate prove that the alleged failure to secure a just decision was not attributable to the fault or negligence of Barbara. Therefore, the district court did not abuse its discretion in denying the Estate's petition to vacate. Because we affirm the dismissal of the petition, we need not reach the Estate's other assignments of error or Donald's assignments of error on cross-appeal.
AFFIRMED.
GERRARD, J., not participating.
NOTES
[1] Nielsen v. Nielsen, No. A-04-894, 2005 WL 1719731 (Neb. App. July 26, 2005) (not designated for permanent publication).
[2] Eihusen v. Eihusen, 272 Neb. 462, 723 N.W.2d 60 (2006).
[3] See Eihusen, supra note 2.
[4] See, Eihusen, supra note 2; McCarson v. McCarson, 263 Neb. 534, 641 N.W.2d 62 (2002); Caddy v. Caddy, 218 Neb. 582, 358 N.W.2d 184 (1984).
[5] See, Eihusen, supra note 2; McCarson, supra note 4.
[6] Caddy, supra note 4.
[7] Id. at 584, 358 N.W.2d at 186.
[8] Eihusen, supra note 2, 272 Neb. at 469, 723 N.W.2d at 65.
[9] Brief for appellant at 10.
[10] Id. at 12.