special proceeding invoked by a motion to compel arbitration, the order would not be final or affect any substantial right. Finally, a court's temporary injunction or stay that merely preserves the status quo pending a further order is not an order that amounts to a dismissal of the action or that permanently denies relief to a party.[20] So the stay here was not a final order in an action that effectively determines the action and prevents a judgment under § 25-1902(1). We conclude that the court's temporary injunction and stay is an interlocutory order that is not appealable.

We recognize that Applied and AUCRA contend they are entitled to have the AAA arbitrators decide which contract provision governs the arbitration process. But they are not prejudiced by waiting to appeal that issue until the court issues a final judgment in the declaratory judgment action. Accordingly, we dismiss this appeal.

APPEAL DISMISSED.

---

[20] See *Pennfield Oil Co., supra* note 11.

---

DEBRA S. RYDER, APPELLANT, V.
ROCKY R. RYDER, APPELLEE.
___ N.W.2d ___

Filed April 10, 2015.    No. S-14-294.

1. **Motions to Vacate: Proof: Appeal and Error.** An appellate court will reverse a decision on a motion to vacate or modify a judgment only if the litigant shows that the district court abused its discretion.
2. **Judges: Words and Phrases.** A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
3. **Divorce: Property Settlement Agreements.** If the terms of a property settlement agreement with respect to real and personal property and maintenance are not found unconscionable, the agreement is binding upon the dissolution court and the initial decree must carry such agreement into effect.
4. **Judgments: Divorce: Property Settlement Agreements.** A dissolution decree which approves and incorporates into the decree the parties' property settlement agreement is a judgment of the court itself.

5. **Contracts.** Ambiguity exists in a document when a word, phrase, or provision therein has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. In other words, a document is ambiguous if, after application of the pertinent rules for construction, there is uncertainty concerning which of two or more reasonable meanings represents the intention of the parties.

6. **Divorce: Modification of Decree: Property Settlement Agreements.** Where parties to a divorce action voluntarily execute a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, its provisions will not thereafter be vacated or modified in the absence of fraud or gross inequity.

7. **Divorce: Judgments.** The meaning of a dissolution decree presents a question of law.

Appeal from the District Court for Cheyenne County: Derek C. Weimer, Judge. Vacated in part and remanded with direction.

Joel B. Jay for appellant.

No appearance for appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

Cassel, J.

## INTRODUCTION

In a marital dissolution proceeding, the parties' property settlement agreement required the husband to "assist" the wife in obtaining a bank loan to purchase a residence. The dissolution decree adopted the agreement. Later, the bank declined to make the loan without the husband's cosignature. On the husband's motion, the district court vacated the assistance clause as ambiguous. The wife appeals.

We conclude that in the absence of fraud or gross inequity, the district court abused its discretion in vacating the portion of the decree implementing the assistance clause. We vacate the portion of its order purporting to do so. Because the district court did not determine whether the assistance clause had been satisfied, we remand with direction that it do so.

## BACKGROUND

Debra S. Ryder and Rocky R. Ryder's marriage was dissolved via a decree entered in June 2013. Prior to the decree, Debra

and Rocky entered into a "Property Settlement Agreement and Parenting Plan," providing for the disposition of various items of property. Rocky was granted the marital residence, which was his before the marriage. Thus, the agreement required Debra to leave the marital home.

Anticipating her need for different housing, the parties signed an agreement with a third party to acquire a residence on Ash Street in Sidney, Nebraska. The agreement is not in the record. Thus, the record is unclear whether the purchase agreement was signed before or after the signing of the property settlement, although Debra testified that she was the last to sign and that she did so in August 2013—which would have been after the property settlement agreement was signed and the decree was entered.

> In the property settlement agreement, Rocky agreed that he shall assist [Debra] in obtaining a loan from Points West Bank in Sidney for up to Ninety-four Thousand Dollars ($94,000.00) in order to purchase the residence located at . . . Ash Street, Sidney, NE[,] and will do the work necessary to place the home in marketable condition, as determined by a Sidney realtor, prior to [Debra] moving into said home. [Rocky] shall have said house in marketable condition no later than December 31, 2013.

In the dissolution decree, the district court acknowledged the above provision of the property settlement agreement and ordered Rocky to comply with his obligations as to the Ash Street residence.

On December 19, 2013, Rocky filed a "Motion for an Order to Vacate and Modify Divorce Decree or in the Alternative to Deem Judgment Satisfied," pursuant to Neb. Rev. Stat. § 25-2001 (Reissue 2008). Rocky alleged that he had assisted Debra in obtaining a loan from Points West Bank, but that Debra was unwilling to enter into the loan agreement. And he further claimed that due to Debra's refusal, the purchase agreement for the Ash Street residence had expired.

However, in an effort to comply with his obligations under the dissolution decree, Rocky explained that he had purchased the Ash Street residence and had offered Debra a loan to purchase the residence from him. But Debra refused to agree to

the arrangement. He therefore requested that the district court vacate or modify the decree or find that he had satisfied his obligations as to the Ash Street residence.

A hearing was conducted, and both Rocky and Debra testified. Rocky explained that he had been contacted by a representative from Points West Bank concerning a loan for the Ash Street residence. The representative first informed Rocky that the representative believed he would be able to assist Debra in obtaining a loan. However, Rocky was later informed that he would need to cosign the loan. And the bank required additional collateral from Rocky, because he would not be living in the Ash Street residence.

After learning of the terms of the loan, Rocky approached Debra with a "side" agreement. Under the agreement, Debra would execute a quitclaim deed conveying the Ash Street residence to Rocky. The deed would be held in escrow, and upon Debra's failure to make a loan payment for 60 days, the deed would be filed with the "Register of Deeds." Rocky would then make any necessary loan payments and place the residence on the market for sale. In his testimony, Rocky confirmed that the agreement was a way to protect himself from having to pay Debra's loan. And he also sought to protect his credit score and his collateral if Debra failed to make the loan payments.

Debra, however, told Rocky that she would not sign the agreement. And the purchase agreement for the Ash Street residence subsequently expired. The purchase agreement with the third party apparently allowed the buyers to make repairs and improvements to the property prior to closing. Rocky testified that he had invested $20,000 to $30,000 in the residence and that if the purchase was not completed, those amounts would have been lost. Because of this investment, he obtained a loan and purchased the residence himself.

After signing the loan documents and closing on the Ash Street residence, Rocky approached Debra with another agreement. He offered Debra a loan to purchase the residence from him under the same terms as the loan he had obtained from Points West Bank. Rocky testified that he would not have made any money under the arrangement, but that it would

"just . . . resolve the situation." But Debra did not want to sign the agreement.

As to his obligations regarding the Ash Street residence, Rocky testified that he believed he was required to "help [Debra] obtain a loan and a fair contract between both of us." And he confirmed that there had been no discussion that he would offer additional collateral and no agreement that he would make any loan payments. He indicated that he would have been willing to cosign a loan with Debra, but under terms that "were fair and equal" and that "protect[ed] both sides." He further confirmed that he believed he had fulfilled his obligation to assist Debra in obtaining a loan.

Additionally, Rocky testified that he was no longer willing to provide Debra with a loan to purchase the Ash Street residence. He and Debra were already "having problems," and the loan arrangement would "cause more problems."

Debra testified that her understanding of Rocky's obligations as to the Ash Street residence was that he would cosign a loan and make any required downpayment. And in order to purchase the residence, she had signed a purchase agreement and loan documents from Points West Bank. However, when she contacted Rocky about the loan documents, he "gave [her] the run around." And approximately 1 week later, he sent her paperwork for another agreement.

Debra confirmed that at the time of the dissolution decree, she and Rocky had never discussed an additional agreement. She told Rocky that she was not going to sign the agreement, because she believed that it was unnecessary and controlling. However, she confirmed that she was both willing to enter into a loan from Points West Bank and able to make the loan payments. But when asked what recourse Rocky would have if she failed to make the loan payments, Debra responded, "That I pay him back?"

As to Rocky's offer to extend her a loan to purchase the Ash Street residence, Debra testified that she "did not want [Rocky] to be [her] loan officer for 20 years." She had attempted to obtain a loan on her own, but she was unable to purchase the residence from Rocky.

The district court entered a written order granting Rocky's request to modify the dissolution decree. The court first determined that Rocky had fulfilled his obligation to place the Ash Street residence in marketable condition. However, it concluded that his obligation to assist Debra in obtaining a loan was "too vague to be enforceable." It observed that both parties had divergent beliefs as to the nature of the obligation and that Debra believed Rocky was required to "meet and accept whatever conditions the bank may have put on the loan." And she could not identify any recourse Rocky would have if she failed to pay the loan. Thus, the court concluded that the obligation "ought to have [been] more fully explained or defined in the [property settlement agreement]." It therefore vacated Rocky's obligation to assist Debra in obtaining a loan.

Debra filed a timely notice of appeal. We moved the case to our docket pursuant to statutory authority.[1]

## ASSIGNMENT OF ERROR

Debra assigns, restated, that the district court abused its discretion in modifying the dissolution decree by vacating the provision requiring Rocky to assist her in obtaining a loan to purchase the Ash Street residence.

Debra does not attack the portion of the district court's order determining that Rocky had fulfilled his obligation to place the Ash Street residence in marketable condition. Thus, that portion of the order is not affected by our resolution of the appeal.

## STANDARD OF REVIEW

[1,2] An appellate court will reverse a decision on a motion to vacate or modify a judgment only if the litigant shows that the district court abused its discretion.[2] A judicial abuse of discretion exists when reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Reissue 2008).

[2] *Eihusen v. Eihusen*, 272 Neb. 462, 723 N.W.2d 60 (2006).

substantial right and denying just results in matters submitted for disposition.[3]

## ANALYSIS

Debra assigns that the district court erred in vacating the provision of the dissolution decree requiring Rocky to assist her in obtaining a loan to purchase the Ash Street residence. She asserts that the provision was based upon the parties' property settlement agreement and that their agreement should have been binding upon the court. She further claims that Rocky's obligation to assist her was not ambiguous.

[3] Debra's assertion as to the binding effect of the property settlement agreement is well taken. Neb. Rev. Stat. § 42-366(1) (Reissue 2008) provides that parties to a dissolution of marriage may enter into a written property settlement agreement containing provisions for, among other things, "the disposition of any property owned by either of them." And in applying § 42-366, we have held that if the terms of a property settlement agreement with respect to real and personal property and maintenance are not found unconscionable, the agreement is binding upon the dissolution court and the initial decree must carry such agreement into effect.[4]

[4] Rocky's obligation to assist Debra in obtaining a loan was not found to be unconscionable by the dissolution court. And his obligation was incorporated into the dissolution decree. Upon entry of the decree, Rocky's obligation to assist Debra became a judgment of the dissolution court. We have long held that a dissolution decree which approves and incorporates into the decree the parties' property settlement agreement is a judgment of the court itself.[5] Thus, Rocky was required by judgment to assist Debra in obtaining a loan to purchase the Ash Street residence.

[5] However, contrary to Debra's argument, Rocky's obligation was ambiguous. We have stated that ambiguity exists in a document when a word, phrase, or provision therein has, or is

---

[3] *Simpson v. Simpson*, 275 Neb. 152, 744 N.W.2d 710 (2008).

[4] See *Reinsch v. Reinsch*, 259 Neb. 564, 611 N.W.2d 86 (2000).

[5] See *Rice v. Webb*, 287 Neb. 712, 844 N.W.2d 290 (2014).

susceptible of, at least two reasonable but conflicting interpretations or meanings.[6] In other words, a document is ambiguous if, after application of the pertinent rules for construction, there is uncertainty concerning which of two or more reasonable meanings represents the intention of the parties.[7]

As the district court observed, the parties possessed divergent understandings of the nature of Rocky's obligation. Debra testified that she believed Rocky was required to cosign a loan and to make any required downpayment. But Rocky's obligation could reasonably be interpreted as requiring only one such action or neither. Rocky could also assist Debra in obtaining a loan in a myriad of other ways, such as providing copies of the parties' income tax returns or other financial documents. We therefore agree that the nature of Rocky's obligation was ambiguous and that it should have been more fully explained or defined in the property settlement agreement.

[6] But the ambiguity of Rocky's obligation did not provide grounds to vacate it from the dissolution decree. We have consistently stated that where parties to a divorce action voluntarily execute a property settlement agreement which is approved by the dissolution court and incorporated into a divorce decree from which no appeal is taken, its provisions will not thereafter be vacated or modified in the absence of fraud or gross inequity.[8] In his motion, Rocky did not allege the existence of fraud or gross inequity. And no evidence of such was received by the district court. Thus, no grounds permitting modification of the decree were established before the district court.

Although Rocky's motion invoked the district court's inherent authority to vacate or modify its decisions within term,[9] this does not affect the outcome. Rocky's motion was filed within the same term as the dissolution decree.[10] And although

---

[6] See *Strunk v. Chromy-Strunk*, 270 Neb. 917, 708 N.W.2d 821 (2006).

[7] *Id.*

[8] See, *Whitesides v. Whitesides*, 290 Neb. 116, 858 N.W.2d 858 (2015); *Rice, supra* note 5; *Strunk, supra* note 6.

[9] See *Jarrett v. Eichler*, 244 Neb. 310, 506 N.W.2d 682 (1993).

[10] See Rules of Dist. Ct. of 12th Jud. Dist. 12-0 (rev. 2010) (providing for calendar year as regular term of court).

the district court did not issue its modification order until after the term expired, it retained the inherent authority to do so.[11] However, the court's inherent authority did not permit the partial modification of the terms of Debra and Rocky's property settlement agreement. As previously discussed, a property settlement agreement with respect to real and personal property and maintenance is binding upon the dissolution court unless its terms are found to be unconscionable.[12] And if unconscionable, the dissolution court may request that the parties revise the agreement or proceed to make its own division of the marital property.[13] The court is not free to selectively vacate a provision of the agreement on the basis of ambiguity as was done in this case.

In vacating Rocky's obligation for ambiguity, the district court apparently misconstrued the nature of the underlying property settlement agreement. A contract may be found to be unenforceable due to a lack of definite or certain terms or a binding mutual understanding between the parties.[14] But in *Rice v. Webb*,[15] we specifically disapproved of the application of contract principles to a property settlement agreement that had been incorporated into a dissolution decree. Once a property settlement agreement has been incorporated into a dissolution decree, the contractual character of the agreement is subsumed into the court-ordered judgment.[16] "'At that point the court and the parties are no longer dealing with a mere contract between the parties.'"[17]

Ambiguity as to a party's obligation under a dissolution decree does not provide grounds for vacation or modification

---

[11]  See *Jarrett, supra* note 9.

[12]  See *Reinsch, supra* note 4.

[13]  See, § 42-366(3); *Prochazka v. Prochazka*, 198 Neb. 525, 253 N.W.2d 407 (1977).

[14]  See *MBH, Inc. v. John Otte Oil & Propane*, 15 Neb. App. 341, 727 N.W.2d 238 (2007).

[15]  See *Rice, supra* note 5.

[16]  See *id*.

[17]  *Id*. at 723, 844 N.W.2d at 299, quoting *Henderson v. Henderson*, 307 N.C. 401, 298 S.E.2d 345 (1983).

of the decree. Rather, we have stated that when a decree is ambiguous, "the parties must bring some form of action which raises the issue and thereby requires the court before whom the matter is then pending to resolve the issue as a matter of law in light of the evidence and the meaning of the decree as it appears."[18]

Rocky raised the issue of the dissolution decree's ambiguity, and the district court received testimony on that issue. But rather than resolving the matter, the court vacated the provision from the decree. And without a basis for doing so, the court's modification constituted an abuse of discretion. We therefore vacate that portion of the court's order purporting to modify the decree.

[7] Ultimately, the issue presented by Rocky's motion was his compliance with his obligation to assist Debra in obtaining a loan. Because the meaning of a dissolution decree presents a question of law,[19] we may address the issue in the first instance. We reject Debra's interpretation of the assistance clause. The clause required Rocky to "assist" Debra. But it did not require him to "obtain" the loan in his own behalf by a cosignature or to provide a downpayment, as Debra advocates.

And the required assistance could take many forms. Because the district court erroneously vacated the assistance clause, it did not decide whether Rocky had fully complied. And because this is a task that the district court should undertake in the first instance, and which we would review for abuse of discretion, we remand the cause with direction to the district court to decide this issue.

## CONCLUSION

The district court determined that Rocky had fulfilled his obligation to place the Ash Street residence in marketable condition. Our decision does not affect that portion of the court's order.

Although Rocky's obligation to assist Debra in obtaining a loan was ambiguous, such ambiguity did not provide a basis

---

[18] *Neujahr v. Neujahr*, 223 Neb. 722, 728, 393 N.W.2d 47, 51 (1986).

[19] See *Strunk, supra* note 6.

to modify the dissolution decree. Without evidence of fraud or gross inequity, modification of the decree was an abuse of discretion. We vacate the portion of the district court's order purporting to do so.

Finally, we address the portion of Rocky's motion seeking an order determining that he had performed his obligation under the assistance clause. Because the district court did not determine whether, based on the evidence before it, Rocky had fully complied with the assistance clause, we remand the cause with direction that the court do so.

Vacated in part and remanded with direction.

————————————

Donald Peterson, appellant, v. Kings Gate
Partners - Omaha I, L.P., and Picerne
Kings Gate, LLC, appellees.
___ N.W.2d ___

Filed April 10, 2015.    No. S-14-383.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.

2. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.

3. **Motions to Dismiss: Pleadings.** To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. In cases in which a plaintiff does not or cannot allege specific facts showing a necessary element, the factual allegations, taken as true, are nonetheless plausible if they suggest the existence of the element and raise a reasonable expectation that discovery will reveal evidence of the element or claim.

4. **Statutes: Appeal and Error.** To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below.

5. **Negligence: Proof.** In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.

6. **Negligence.** The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.

7. ____. The existence of a duty generally serves as a legal conclusion that an actor must exercise that degree of care as would be exercised by a reasonable person under the circumstances.